William Wentworth FOSTER,
Appellant,

v.

Mary BASHAM, Appellee.

No. 90–2069.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 19, 1990.

Decided May 6, 1991.

Rehearing Denied July 16, 1991.

William Wentworth Foster, pro se.

Michael E.C. Pritchett, Jefferson City, Mo., for appellee.

Before ARNOLD, BOWMAN and MAGILL, Circuit Judges.

PER CURIAM.

William Wentworth Foster appeals from the District Court's order granting summary judgment to Mary Basham, supervisor of the mail room at the Missouri State Penitentiary (MSP), in his action filed under 42 U.S.C. § 1983. Foster claims that a prison policy of preventing access to the listings of attorneys in the telephone yellow pages prevented him from having meaningful access to the courts and to attorneys. The District Court held the policy was unconstitutional, but that Basham was entitled to qualified immunity on Foster's damages claim, and that Foster's claim for injunctive relief was moot because Foster was no longer at the MSP.

I.

On September 10, 1987, Foster, an inmate in the Special Management Facility (SMF) at the MSP, filed his complaint alleging that on several occasions between 1985 and 1987, Basham withheld several Southwestern Bell Telephone Yellow Pages and photo copies of listings of attorneys from city telephone books, from mail which Foster received from family and friends. Foster had requested the listings to find attorneys and private investigators to assist him or represent him in various civil and criminal lawsuits. Basham forwarded to Foster a printed form informing him that the telephone book or copies of pages from the book had arrived, and that Foster would not be permitted to receive such material. Foster sought compensatory and punitive damages for the emotional distress caused by the violation of his constitutional right to due process when he was prevented from effectively prosecuting his lawsuits, and equitable relief. On March 16, 1989, Foster was transferred to the Potosi Correctional Center.

Basham filed a motion for summary judgment, enclosing an affidavit attesting that inmates at the MSP may not receive mailing lists of any kind, including pages from telephone directories. She stated that the rationale for this rule was that the MSP had a significant problem with inmates engaging in uninvited solicitation of persons and businesses outside the institution when the inmates possess mailing lists, causing those outsiders inconvenience, and sometimes misrepresenting themselves and seeking money or other benefits. Basham also stated that inmates may obtain lists of attorneys from telephone directories in the prison library or from their caseworkers, who would give them the names of a few attorneys at a time rather than one comprehensive list, thereby preventing any solicitation abuse.

Basham argued the mailing-list policy was reasonable and rationally connected to a legitimate governmental interest in preventing solicitation and misrepresentations, thus satisfying the test enunciated in *Turner v. Safley,* 482 U.S. 78, 89–91, 107 S.Ct. 2254, 2261–63, 96 L.Ed.2d 64 (1987). Basham argued that providing exceptions for lists of attorneys would invite demands for other exceptions. Further, Basham ar-

gued that Foster failed to show how he was actually injured by the denial of the attorney listings.

Basham also contended she was entitled to qualified immunity from suit. Focusing on the "specific nature of the conduct complained of and the state of the law with respect to the identified conduct at the time the official acted," *Myers v. Morris,* 810 F.2d 1437, 1459 n. 16 (8th Cir.), *cert. denied,* 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987), she argued that there was no case which stated that a prohibition on the possession by inmates of mailing lists of any kind denied inmates any constitutional right. Thus, Basham argued there was no clearly established constitutional right to receive attorney listings from telephone directories through the mail. Finally, Basham argued Foster's claim for equitable relief was moot because he was no longer incarcerated at the MSP.

Foster responded through affidavits from other inmates as well as his own, that, contrary to Basham's assertions, there is no telephone directory in the law library, and that when caseworkers decide which attorneys' names inmates are provided, inmates are placed in the position of obtaining attorneys chosen by the same persons against whom the litigation may be directed. Further, use of a telephone directory may be the only way to show the court that attempts have been made to obtain counsel when applying for appointment of counsel. *See In re Lane,* 801 F.2d 1040, 1043 (8th Cir.1986). Foster also noted that the prison allows and encourages inmates to receive pen pal lists.

Basham replied with a supplemental affidavit stating that inmates have access to the Missouri Legal Directory located in the MSP general population library, and that pages could be copied for those inmates unable to come to the general population library, or inmates could obtain a copy of the directory free of charge from the publisher. Charles Rosenkeotter, supervisor of the general population law library, attested that he authorizes inmates to obtain the legal directories from the publisher but not copies of pages from telephone directo-

ries received from family or friends because "the source in the latter case is neither under prison control nor a publisher." Furthermore, he claimed, Foster has access to the yellow pages at the Potosi Correctional Center.

Foster submitted a supplemental response with affidavits attesting that the legal directories are not supplied to inmates in SMF, and that law clerks from the general population library are instructed not to bring the directories to SMF. In addition, his failure to win any of his lawsuits while acting pro se was proof of his injury, he said.

The District Court concluded that the blanket policy of denying inmates access to telephone-book pages listing attorneys could not be justified out of concern that attorneys might be subjected to harassment when no incidents of harassment were cited. Allowing caseworkers to provide names of attorneys was insufficient, particularly when the inmate may be suing the caseworker or his friends and associates. The prison's policy thus violated an inmate's right to meaningful access to the courts and to legal assistance. The District Court, however, found that Basham was entitled to qualified immunity, because only in this case had this issue been squarely presented for determination. The Court concluded Basham could not have been objectively aware that her conduct during the relevant times violated any clearly established right. Further, the Court found Foster's equitable claim was mooted by his transfer out of the MSP.

## II.

On appeal Foster argues Basham knew or should have known that preventing access to attorney lists would prevent inmates from gaining meaningful access to the courts and to legal assistance, and that such a policy, therefore, violated a clearly established right. Foster argues that prison policy statements # 8–1.1 and .2 (the text of which was not included in the record), relating to access to attorneys and to the courts, proved that Basham knew she was violating a clearly established

right. Foster also asserts Basham had testified in court on numerous occasions in connection with inmates' complaints of interference with their right of access to the courts and to communicate with their attorneys.

We agree with the District Court that the policy in question is unconstitutional, and that the request for injunctive relief is moot. We also agree with the District Court as to qualified immunity, though not entirely for the reason given by the court.

 Qualified immunity is a question of law. *See Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). Under *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987), the operation of the clearly-established-law standard "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." The level of generality may not be such that "it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of *Harlow [v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) ]." *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3039. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640, 107 S.Ct. at 3039. Although subjective motive (or intent) is not relevant to the qualified-immunity analysis, the knowledge possessed by the defendant at the time the challenged action occurred is, along with the clearly established law as of that time, the focus of the inquiry.

It follows from what we have said that the determination whether it was objectively legally reasonable to conclude that a given search was supported by probable cause or exigent circumstances will often require examination of the information possessed by the searching officials. But contrary to the Creightons' assertion, this does not reintroduce into qualified immunity analysis the inquiry into officials' subjective intent that *Harlow* sought to minimize. See *Harlow,* 457 U.S., at 815–820 [102 S.Ct. at 2736–39]. The relevant question in this case,

for example, is the objective (albeit fact-specific) question whether a reasonable officer could have believed Anderson's warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed. Anderson's subjective beliefs about the search are irrelevant.

*Anderson,* 483 U.S. at 641, 107 S.Ct. at 3040.

Applying those principles to this case, we conclude that Basham should have qualified immunity. There is no doubt that the right to meaningful access to the courts and to legal assistance is a clearly established constitutional right. *See Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). Here the implementation of the no-mailing-list policy adversely impinged that right, but only because of the lack of reasonable alternatives for an inmate in SMF to acquire names of possible attorneys. Claims of a violation of the right of access require an examination of the reasonable alternatives available. *See id.* at 830, 97 S.Ct. at 1499. We agree with the District Court that having caseworkers supply inmates with a limited number of attorney names is not a reasonable alternative. Upon review of the record, there is also no dispute that for inmates in SMF, there are no other alternatives for obtaining attorney lists.

However, based on the affidavits submitted by the parties, there is also no doubt that Basham thought that all the inmates, including those in the SMF, in fact had access to names of attorneys through the availability of the Missouri Legal Directory. She had no knowledge that in practice the prison policy against permitting inmates to receive mailing lists from family and friends deprived those in the SMF of reasonable alternatives to acquire names of attorneys. Because of her information that all inmates had access to the Missouri Legal Directory, she had no reason to think that meaningful access to the courts or to attorneys was being denied. In these circumstances, it is evident that a reasonable prison official could have believed that the mailing list policy was lawful as to all the

inmates at the MSP. *See Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039. The District Court therefore was correct in its determination that Basham was entitled to qualified immunity.

The order of the District Court is affirmed.