# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1472

_____

| | | |
|---|---|---|
| Howard Lockridge, | * | |
| | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Board of Trustees, of the University | * | |
| of Arkansas, a Public Body Corporate; | * | |
| Dr. B. Allan Sugg, in his official | * | Appeal from the United States |
| capacity as President of the University | * | District Court for the Eastern |
| of Arkansas; Dr. Steven Jones, | * | District of Arkansas. |
| Chancellor, Phillips Community | * | |
| College of the University of Arkansas, | * | |
| | * | |
| Appellants. | * | |
| | * | |
| _____ | * | |
| | * | |
| State of Missouri; State of South | * | |
| Dakota, | * | |
| | * | |
| Amici on Behalf of | * | |
| Appellants. | * | |

_____

Submitted: October 9, 2002

Filed:  January 14, 2003 (Corrected: 01/30/03)

_____

Before HANSEN, Chief Judge, and HEANEY, McMILLIAN, BOWMAN, WOLLMAN, LOKEN, MORRIS SHEPPARD ARNOLD, MURPHY, BYE, RILEY, MELLOY, and SMITH, Circuit Judges.
_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Howard Lockridge brought race and sex discrimination claims under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e through e-17), 42 U.S.C. § 1981, and 42 U.S.C. § 1983 based on the denial of equal protection, against the University of Arkansas's board of trustees, the university president in his official capacity, and the chancellor of Phillips Community College of the University of Arkansas (PCCUA), Dr. Steven Jones, in his official and individual capacities. (Because we have held that a claim alleging a violation of § 1981 may not be brought directly against a state actor, but must be brought under § 1983, *see Artis v. Francis Howell North Band Booster Ass'n*, 161 F.3d 1178, 1181 (8th Cir. 1998), we liberally construe Mr. Lockridge's complaint as including claims for violations of the equal protection clause and § 1981brought under § 1983.) In an order granting in part and denying in part the defendants' summary judgment motion, the district court denied Dr. Jones's request for qualified immunity. All of the defendants appeal.

Mr. Lockridge, who is black, alleged in his complaint that he was denied a promotion from his position as chair of the department of industrial technology to the position of dean of industrial technology and workforce development at PCCUA on account of his race and sex. The court granted summary judgment to all of the defendants with respect to Mr. Lockridge's sex discrimination claims, and held that neither Dr. Jones nor the university president could be individually liable under Title VII. The court ruled with respect to the remaining race discrimination claims that the defendants were not entitled to judgment as a matter of law on the merits and that Dr. Jones was not entitled to qualified immunity.

On appeal, Dr. Jones contends that he is entitled to qualified immunity because Mr. Lockridge did not apply for the promotion and told his supervisor that he was not going to apply. The other defendants argue that the claims against them may also be resolved in this appeal because the qualified immunity issue is intertwined with the merits of Mr. Lockridge's failure-to-promote claims against all of the defendants. In response, Mr. Lockridge argues that we do not have jurisdiction over the appeal. He also contends that he may prevail despite not having applied for the position because employees had previously been promoted to dean without filing applications and past practices indicated that filing an application would have been futile, and that he would have applied if the application period had not been shorter than usual.

I.

Mr. Lockridge, as we have said, questions this court's jurisdiction over this interlocutory appeal, and we first address our jurisdiction over the denial of qualified immunity to Dr. Jones. Such a ruling is immediately appealable if it "resolve[s] a dispute concerning an 'abstract issu[e] of law' relating to qualified immunity ... typically, the issue whether the federal right allegedly infringed was 'clearly established' " *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996) (quoting *Johnson v. Jones*, 515 U.S. 304, 317 (1995)). Although we may not review in an interlocutory appeal a district court's finding that certain facts are in dispute, *see Thomas v. Talley*, 251 F.3d 743, 746 (8th Cir. 2001), we may determine whether all of the conduct that the district court "deemed sufficiently supported for purposes of summary judgment" violated the plaintiff's clearly established federal rights, *see Behrens*, 516 U.S. at 313; *Heidemann v. Rother*, 84 F.3d 1021, 1027 (8th Cir. 1996).

Here, Dr. Jones argues that the undisputed facts compel the conclusion that he did not violate Mr. Lockridge's clearly established federal rights. We conclude that we have jurisdiction over this "abstract issue of law." We conduct our review by accepting as true the facts that the district court specifically found were adequately supported, along with those facts that the district court " 'likely assumed,' " *see*

*Behrens*, 516 U.S. at 313 (quoting *Johnson*, 515 U.S. at 319). Where the district court did not make a finding regarding a factual issue, we determine the facts that it "likely assumed," *see id.*, by viewing the record favorably to the plaintiff as in any other summary judgment motion, *see Heidemann*, 84 F.3d at 1027 & n.4.

II.

The threshold question in a qualified immunity case is whether "[t]aken in the light most favorable to the party asserting the injury," the evidence shows that the defendant's conduct violated a federal right at all. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the answer to this question is 'no' then we need not inquire further to determine whether the right was clearly established. *See id.* Here Dr. Jones argues that the undisputed facts compel the conclusion that he did not violate Mr. Lockridge's federal rights, and that therefore the court need not inquire further and should grant him qualified immunity. We agree for the reasons that follow.

The facts that were found supported by the district court as well as those it "likely assumed," *see Behrens*, 516 U.S. at 313, indicate that in the spring of 1998 Dr. Jones appointed a search committee to seek applicants for the position of dean of industrial technology and workforce development. Although a PCCUA employee testified that notices of the opening were posted on college bulletin boards before April 21, Mr. Lockridge and others denied seeing these notices.

Mr. Lockridge testified at his deposition that he first learned that PCCUA was seeking applicants for the position on April 21, when he received a notice from Dr. Jones by electronic mail. This notice, which was sent to the entire PCCUA community, stated that at the recommendation of Linda Killion (Mr. Lockridge's supervisor) and others the division of business and technology, over which she was dean, was being restored to its dual components. The notice further stated that Ms. Killion was to become dean of the division of business and computer technology; that PCCUA was "currently advertising" for the dean of the other component, the

-4-

division of industrial technology and workforce development; that copies of the job announcement had been posted on the campus; and that advertisements would run in statewide newspapers the following weekend.

Upon reading the notice, Mr. Lockridge became upset. He testified that in the past PCCUA had hired "all the other deans positions" and "most of the executive staff" from within the college community without advertising in outside publications; "very seldom" in PCCUA's history, he said, did it "go outside" to fill positions. He contended that this changed when he was the logical choice for the position within the PCCUA community, and that he should have been offered the position before outside applicants were sought. The day after he received the electronic mail, Mr. Lockridge went to Ms. Killion and asked her why she had not recommended him for the position. Ms. Killion did not respond to the question directly but asked him if he was going to apply for the job, and he said that he was not. According to Dr. Jones, Ms. Killion notified him that Mr. Lockridge stated that he was not going to apply.

Mr. Lockridge further testified that at some point after his conversation with Ms. Killion, he decided to apply for the job. He began preparing an application but did not notify anyone of his change of heart. In the meantime, the search committee recommended Tracy McGraw, a white male who was not a PCCUA employee, for the position, and Dr. Jones decided to hire him. On May 5, Dr. Jones told Mr. Lockridge that he was going to hire Mr. McGraw. At the time that he learned that the decision had been made, Mr. Lockridge had not applied, and he had thought that he still had time to do so because PCCUA usually took at least four weeks to fill a position.

In its order denying summary judgment in part, the district court found that fact questions remained regarding the "policy and practice followed at PCC[UA] as to promotions" and "whether certain positions" such as the department chair for which [Ms. Killion] (a white female) was selected "were announced as vacancies"; whether

-5-

internal searches were conducted first before positions were advertised; whether everyone was required to apply for promotions; and what time period was usually allowed for applying for a position. The court denied Dr. Jones qualified immunity because "the fact questions surrounding the actual policy and practices regarding promotions and whether applications were always required" prevented it from determining whether he "violated a clearly established right in selecting a search committee."

We first determine whether Mr. Lockridge established a violation of a federal right at all. *See Saucier*, 533 U.S. at 201. His claims against Dr. Jones are brought pursuant to § 1983, which requires that Mr. Lockridge show that Dr. Jones was acting under color of state law and violated Mr. Lockridge's federal rights. The federal rights at issue are based on the equal protection clause and on § 1981. As applied in this case, either provision requires Mr. Lockridge to present evidence of purposeful racial discrimination, *see Dickens v. Missouri*, 887 F.2d 895, 896 (8th Cir.1989) (per curiam) (equal protection); *General Building Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391(1982) (§ 1981), and evidence of Dr. Jones's participation in that discrimination, *see McDowell v. Jones*, 990 F2d 433, 435 (8th Cir. 1993).

We believe that Dr. Jones was entitled to qualified immunity because the circumstances present here cannot support a finding that Mr. Lockridge was intentionally discriminated against when he was denied the promotion. Where, as here, there is no direct evidence of discrimination, the *McDonnell Douglas* burden-shifting analysis is applied to employment discrimination claims based on § 1981, *see Bogren v. Minnesota*, 236 F.3d 399, 409 (8th Cir. 2000), *cert. denied*, 122 S. Ct. 44 (2001), and the equal protection clause, *see Floyd v. State of Mo. Dep't of Soc. Serv.*, 188 F.3d 932, 936 (8th Cir. 1999), as a way to show intentional discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973); *see also Richmond v. Board of Regents*, 957 F.2d 595, 598 (8th Cir. 1992). Under this framework, the plaintiff ordinarily must establish a *prima facie* failure-to-promote case by showing,

*inter alia*, that he or she applied for the promotion and was rejected. *See Dotson v. Delta Consol. Industries, Inc.*, 251 F.3d 780, 781 (8th Cir. 2001). As we have said, Mr. Lockridge acknowledged that he did not apply for the position and that he told his supervisor that he was not going to apply.

As Mr. Lockridge points out, however, the requirements for establishing a *prima facie* discrimination case are flexible and may vary according to the case. *See McDonnell Douglas*, 411 U.S. at 801 n.13. To excuse his failure to apply for the promotion, Mr. Lockridge relies on *Lyoch v. Anheuser-Busch Companies*, 139 F.3d 612, 615 (8th Cir. 1998), which held that the plaintiff was not required to establish the typical requirements for a *prima facie* failure-to-promote case because the employer's promotions policy was "informal and subjective" and "vague and secretive." But here Mr. Lockridge was directly notified of the particular opening at issue and asked whether he was going to apply.

Although the district court found that factual questions were raised as to PCCUA's promotion procedures generally, and Mr. Lockridge testified that PCCUA had always chosen deans from within the college community, we do not believe that this circumstance is sufficient to establish a *prima facie* case of racial discrimination. Here, Mr. Lockridge acknowledged that two of the six deans at PCCUA were black, and that at least two other black individuals had previously held the position of dean. Based on Mr. Lockridge's testimony, these individuals became deans without consideration being given to outside applicants. More importantly, vacancies in many positions at universities (and most other places) are necessarily filled in different ways, depending on the nature of a position and its responsibilities, internal circumstances, and the exigencies of the moment. We do not believe that a reasonable fact-finder could infer intentional race discrimination from the decision to consider outside applicants when seeking a qualified individual for the position involved in this case, particularly where each member of the college community was individually notified of the opening.

Mr. Lockridge also argues that he comes within the rule that excuses a failure to make an application when an employer consistently enforces a policy of discrimination, thereby making it apparent that applying for the position would be futile. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365 (1977). In *Teamsters*, the Court stated that "[v]ictims of gross and pervasive discrimination" are not required to apply formally for a position if they can establish that but for the employer's discriminatory practices they would have applied for a job. *See id.* at 367-68. According to Mr. Lockridge, Dr. Jones failed to promote him on prior occasions and thereby created an atmosphere at PCCUA in which it was futile for him to apply for the position of dean. He also describes incidents in which he asserts that other individuals at PCCUA were subjected to racial discrimination.

As the original panel in this case noted, *Teamsters* was a class action, and the analysis used there is usually applied in other class actions, rather than to actions brought by individual plaintiffs. *See Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 355-56 (5th Cir. 2001); *Craik v. Minnesota State Univ. Bd.*, 731 F.2d 465, 469-70 (8th Cir. 1984). But even if that fact is of no particular legal significance, there is no claim here that there was a consistently enforced practice of refusing to hire black individuals for the position of dean, such that a black applicant would face "certain rejection," *see Teamsters*, 431 U.S. at 365. Having reviewed all of the evidence, we believe that no reasonable person could conclude from the present record that "gross and pervasive discrimination" made it futile for Mr. Lockridge to apply for the promotion.

Mr. Lockridge draws our attention to the fact that he had applied for promotions a number of times before and had been rejected. In three of those instances, he asserts, twice in 1988 and once in 1992, a less qualified white person was appointed to the position. It might well be that Mr. Lockridge would have been able to make out a *prima facie* case of race discrimination in these prior instances, and it might be that an employee's proven experience with an employer could, in a

proper case, furnish a reason for relaxing the requirement that an employee must apply for a position in order to make out a *prima facie* case that he was unlawfully discriminated against. But here, Mr. Lockridge seeks to rely on incidents some of which occurred at least a decade before the relevant employment decision, not all of which, moreover, included the same principal actors. In these particular circumstances, we are unable to conclude that Mr. Lockridge has made out a case on the question of whether it was futile for him to apply.

We have observed that plaintiffs in discrimination actions have been excused from applying for promotions if the "*job opening was not officially posted* or advertised *and* either ... the plaintiff had no knowledge of the job from other sources until it was filled, or ... the employer was aware of the plaintiff's interest in the job notwithstanding the plaintiff's failure to make a formal application." *Chambers v. Wynne School Dist.*, 909 F.2d 1214, 1217 (8th Cir. 1990) (emphasis added) (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 568 (8th Cir.1982), *cert. denied*, 460 U.S. 1083 (1983) and *EEOC v. Metal Service Co.*, 892 F.2d 341, 348-49 (3d Cir.1990)). Here, however, Mr. Lockridge cannot meet the threshold requirement because the job opening was officially posted. In fact, Dr. Jones himself notified Mr. Lockridge of the position in writing.

We have also stated that an employee who does not formally apply must make " 'every reasonable attempt to convey his [or her] interest in the job to the employer' " before he or she may prevail on a discrimination claim. *See Chambers*, 909 F.2d at 1217 (quoting *Metal Service*, 892 F.2d at 348). But Mr. Lockridge did not apply, told his supervisor that he was not going to apply, and (although he contends that he later changed his mind) did not notify the decision-makers that he had decided to apply. Under these circumstances we believe that as a matter of law Mr. Lockridge did not make"every reasonable attempt" to let PCCUA or Dr. Jones, in particular, know that he was interested in the position.

In addition, Mr. Lockridge asserts that the time between the date of the announcement of the opening and the date of hiring was shortened here because of his race, so that he was denied the opportunity to apply. Although in this appeal we accept as true Mr. Lockridge's testimony that the time period for applying was shorter than usual, we do not believe that this fact can raise an inference in a reasonable mind of racial animus.

Mr. Lockridge asks us to take into account the fact that he made the statement to Ms. Killion that he was not going to apply in anger. First, we note that there is no evidence that Dr. Jones knew that Mr. Lockridge was angry (or that he knew anything about this conversation other than that Mr. Lockridge said he was not going to apply), and the defendant's lack of knowledge sometimes may affect whether qualified immunity is available, *see Foster v. Basham*, 932 F.2d 732, 735 (8th Cir. 1991) (per curiam). But here we do not think that Dr. Jones's knowledge matters because neither Mr. Lockridge's emotional state nor his query as to why Ms. Killion did not recommend him for the job alters the legal effect of his statement that he was not going to apply. We further note that Mr. Lockridge, rather than repudiating his statement, communicated with no one at PCCUA about the job for nearly two weeks afterward, at which time Dr. Jones informed him that he had decided to hire Mr. McGraw.

We conclude that based on the facts that the district court found supported and those that it "likely assumed," Mr. Lockridge cannot establish that his federal rights were violated at all when he was not promoted to the position of dean of industrial technology and workforce development. Because a violation of Mr. Lockridge's federal right to be free from race discrimination was not established, we need not determine the degree to which Dr. Jones was personally involved in the hiring process to conclude that he is entitled to qualified immunity. Where no federal right was violated, we also need not consider whether the right allegedly violated was "clearly established."

-10-

## III.

The other defendants contend that we also have jurisdiction to decide Mr. Lockridge's discrimination claims against them because those claims are intertwined with our decision regarding qualified immunity for Dr. Jones. Usually our "jurisdiction on interlocutory appeal is limited to the resolution of the issue of qualified immunity," and "[w]e may not consider summary judgment on the merits of the case at this interlocutory stage." *Mettler v. Whitledge*, 165 F.3d 1197, 1202 (8th Cir. 1999). Pendent appellate jurisdiction is appropriate only in "exceptional circumstances." *Natale v. Ridgefield*, 927 F.2d 101, 104 (2d Cir. 1991), *as quoted in Johnson*, 515 U.S. at 318.

We believe that this case presents an exceptional circumstance in which we have jurisdiction over issues that are "inextricably intertwined" with those appealable at the interlocutory stage. An issue is "inextricably intertwined" with properly presented issues only " 'when the appellate resolution of the collateral appeal necessarily resolves the pendent claims as well.' " *Kincade v. City of Blue Springs*, 64 F.3d 389, 394 (8th Cir.1995), *cert. denied*, 517 U.S. 1166 (1996) (quoting *Moore v. City of Wynnewood*, 57 F.3d 924, 930 (10th Cir.1995)); *see also Swint v. Chambers County Comm'n*, 514 U.S. 35, 50-51 (1995). Here, we have decided that because Mr. Lockridge was aware of the opening, did not apply, and told his supervisor that he was not going to apply for the position, Mr. Lockridge does not have an equal protection claim or a § 1981 discrimination claim against Dr. Jones individually. The same *McDonnell Douglas* burden-shifting analysis is applicable to all of Mr. Lockridge's discrimination claims, including his Title VII claim against the board of trustees of the university. We therefore conclude that our resolution of the qualified immunity issue in this case "necessarily resolves" all of the other claims in favor of the defendants.

Accordingly, we reverse the district court's order insofar as it denied Dr. Jones qualified immunity and denied all of the defendants' summary judgment on the merits,

and we remand to the district court for entry of judgment in favor of the defendants on all claims.

HEANEY, Circuit Judge, with whom McMILLIAN, MURPHY, and SMITH, Circuit Judges, join, dissenting.

I respectfully dissent. Lockridge has presented evidence sufficient to raise a genuine issue of material fact on his race discrimination claim. I would therefore affirm the district court's denial of appellants' summary judgment motion. The promotion policy at PCCUA, largely supervised by Jones, is ambiguous and potentially discriminatory, and Lockridge deserves a jury trial.

Under the circumstances, Lockridge need not have formally applied for the vacant deanship to have established a prima facie case of racial discrimination. An employee's failure to apply for a position pursuant to established procedures will normally bar his claim. However, the failure to apply is excused where the employer has no formal application process, where the employee is unaware of the opportunity, see Kehoe v. Anheuser-Busch, Inc., 96 F.3d 1095, 1105 n.13 (8th Cir. 1996), or where the employer's promotions policy is "informal and subjective" and "vague and secretive." Lyoch v. Anheuser-Busch Companies, Inc., 139 F.3d 612, 615 (8th Cir. 1998). See also EEOC v. Metal Service Co., 892 F.2d 341, 348 (3rd Cir. 1990) ("Courts have generally held that the failure to formally apply for a job opening will not bar a Title VII plaintiff from establishing a prima facie claim of discriminatory hiring, as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer."); Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1133 (11th Cir. 1984) ("[D]efendant used no formal procedures for posting notice of available promotions or for determining who would be offered the promotion. Instead, the company relied on 'word of mouth' and informal review procedures.").

-12-

Another circumstance in which courts need not consider the application requirement is where the employer has failed to establish a clear personnel procedure for promotions. This is direct evidence of discrimination, and the McDonnell Douglas analysis is inapplicable to the matter. Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985). "The failure to establish 'fixed or reasonably objective standards and procedures for hiring' is a discriminatory practice." Watson v. National Linen Serv., 686 F.2d 877, 881 (11th Cir. 1982) (quoting Brown v. Gaston Co. Dyeing Machine Co., 457 F.2d 1377, 1382 (4th Cir. 1972)).

In the case before us, the record shows that PCCUA utilized several different procedures for hiring and promotions. It is unclear under what circumstances Jones elected to use each procedure. Lockridge's attempts at promotion at PCCUA demonstrate the seemingly random and subjective promotions process. For example, in 1988, Lockridge "formally applied" for the position of Director of Continuing Education. Jones responded to this application by telling Lockridge he would contact him when PCCUA decided to fill the position. In 1992, PCCUA hired Deborah King, a white woman, as Director of Continuing Education. Lockridge alleges that the position was never officially advertised or posted.

In 1988, the college hired Jack McCommon, a white man, as Associate Dean of Technical and Industrial Programs. Lockridge alleges this position was not posted, and that the person hired was not as qualified as he. At the time, Lockridge had two technical graduate degrees and twelve years of teaching experience. In 1993, Lockridge applied for the same position again and was not interviewed for the job because he lacked the "requisite vision." Although Steven Murray, Academic Dean of Instruction at the time, stated that the college's hiring policy was to conduct an internal search for qualified applicants before advertising outside the college, the record does not show whether PCCUA carried out an internal search. Ultimately, John Little, a white male, was recommended for the position, and Jones approved this recommendation.

In 1995, Jones decided to merge the Division of Technical and Industrial Education, where Little was Associate Dean, and the Division of Business and Data Processing, where Linda Killion was Associate Dean, to form the Division of Business and Technology. After having fired Little, Jones eliminated that deanship, and Killion became the Dean of Business and Technology. The record shows that Killion did not file an application for this position or at least two others that she held at the college: department chair and Associate Dean of Business & Data Processing.

Three years later, in 1998, Jones restored the "original dual components" of the divisions described above. Killion was to lead the Division of Business and Computer Technology, and the college was to commence a search for a person to lead the Division of Industrial Technology and Workforce Development. On April 21, 1998, Jones sent an e-mail to the faculty announcing his decision. On April 22, Lockridge asked Killion why she did not recommend him for the open position when she knew he was qualified for the job and when the college policy was to look for qualified internal applicants first before conducting an external search. On May 5, 1998, a mere two weeks after Lockridge was informed of the vacancy, Lockridge discovered that Tracy McGraw, a white man, had been hired for the deanship based on the search committee's recommendation.

Appellants insist that the hiring process in this instance could not have been more explicit: the administration posted the vacant position announcement on campus, advertised it in state and local newspapers, and e-mailed the announcement to the entire campus community, and Lockridge's supervisor asked whether he was going to apply for the position. It was not, they assert, a "vague and secretive" process. Nevertheless, the college fails to show what its procedure for hiring and promotions actually is. The record indicates that Jones has the discretion to

determine whether a search committee or the appointment process for a vacant position will be utilized.[1]  He also has the ultimate authority in hiring decisions.

_____

[1]In deposition, Jones provided the following responses to questions regarding the promotions policy at PCCUA:

Q. [Have you given notice] to the faculty of how vacancies for promotions will be determined?  Are there any writings?

A. There's a college policy that discusses the general protocols for filling new positions . . . we have to adhere to state regulations on advertisings [sic] and postings and those sorts of issues.

\* \* \*

Q.  Now if you choose to, decide to promote someone you have that power don't you?

A.   If a recommendation is made to me for a promotion consideration, I ultimately do make the hiring decision, yes.

Q.  And sometimes you make the judgment of whether or not you're going to promote somebody or create or restructure a section of the department in order to determine some other way for filling a vacancy?

A.  Yes, sir; that is my responsibility as CEO.

(Deposition of Dr. Steven W. Jones at 7-8).

Q.  So that it is fair to say, isn't it doctor, that you had a policy of promoting from within?

A.  No sir; it's not.

Q.  Well, at least you had a policy of promoting people to the position of dean from within did you not?

In support of the appellants' position, the majority asserts that university administrators need significant discretion in filling vacancies, and that to expect an institution to have a clear promotions policy would frustrate the hiring process. This line of reasoning only serves to enforce a potentially discriminatory practice of hiring and promotions at PCCUA. Lockridge has unsuccessfully sought a promotion to a deanship since 1988. His failure to submit an application for the most recently posted vacancy cannot be considered in isolation, as the majority suggests, nor is it fatal to his claim. Lockridge was given the opportunity to apply, but not the opportunity to be hired from within, free from outside competition, which was an advantage that his supervisors and other similarly qualified colleagues have enjoyed throughout their tenure at PCCUA. Furthermore, there is sufficient evidence to allow a jury to

---

A. That might be a fair assessment.

(Id. at 22.)

Q. Who was in line had you followed a promotion from within policy? Who was in line to get that other associate dean position based on your staff at that time?

A. Mr. Walker, I don't have a promotion from within policy.

Q. To associate dean you said you did.

A. I don't have a policy; no, sir.

Q. The practice then. According to your practice who would have been next in line to get that position?

A. Promotions from within have been a practice on occasions, on other occasions they have not been Mr. Walker.

(Id. at 117).

-16-

conclude that the practice of hiring new deans from within the PCCUA community changed once Lockridge was the obvious next choice for an internal promotion.

There is no doubt in my mind that Lockridge has presented sufficient questions of fact regarding the arbitrary manner in which Jones hired and promoted faculty members. The evidence in the record fails to clarify which positions were announced as vacancies at the college, whether everyone was required to make application for promotions, and what the usual time frame was between the announcement of a vacancy and the deadline for the submission of an application. A reasonable jury could conclude that the subjective manner in which the administration conducted these matters is direct evidence of discriminatory practices, triggering an entirely different analysis than what appellants have presented to this court. See Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985). I would therefore affirm the district court's judgment allowing Lockridge's failure to promote claim on the basis of race to proceed to trial.

Regarding Jones's qualified immunity claim, the district court correctly held that Jones's alleged intent to discriminate against Lockridge on the basis of his race, if proved, would not be an act in good faith as required by Arkansas's indemnification law. The court also noted that the ambiguity surrounding the policy and practices regarding promotions at the college precluded Jones's qualified immunity defense. I believe we should affirm this matter as well.

The determination of whether a state actor is entitled to protection of qualified immunity is a two-step process. Saucier v. Katz, 533 U.S. 194, 200 (2001). The initial question is whether, taken in the light most favorable to Lockridge, the facts alleged show that Jones's conduct violated a constitutional right. Washington v. Normandy Fire Protection Dist., 272 F.3d 522, 526 (8th Cir. 2001). There is no dispute that Lockridge has alleged that Jones violated §§ 1981 and 1983 by failing to promote him to the vacant deanship because of his race.

-17-

The next inquiry is whether the right was clearly established. Washington, 272 F.3d at 526 (citation omitted). "To be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). This court has broadly considered what constitutes "clearly established law" for the purposes of a qualified immunity inquiry. Sexton v. Martin, 210 F.3d 905, 909 (8th Cir. 2000); Boswell v. Sherburne County, 849 F.2d 1117, 1121 (8th Cir. 1988).

Section 1983 provides individuals with a civil remedy for the violation of constitutional rights. To establish a § 1983 violation, the plaintiff must show 1) that a person has deprived him of a federal constitutional or statutory right; and 2) that the person acted under color of state law when it deprived the plaintiff of the federal right. Gomez v. Toledo, 446 U.S. 635, 640 (1980). Lockridge must show, therefore, that Jones, acting under color of state law, deprived him of a constitutional right. The appellants allege that the complaint is devoid of any allegations of personal acts by Jones that deprived Lockridge of a constitutionally protected right. Jones conceded in his deposition, however, that he has the discretion to determine how a vacant position will be filled, either through a hiring process or by direct appointment. Because PCCUA's ambiguous promotion policy may be direct evidence of race discrimination, it is possible that Jones's alleged discretion in such matters is implicated. A reasonable jury could conclude that Jones was personally involved in failing to promote Lockridge because of his race in violation of the Fourteenth Amendment.

If Jones, as a public official, intentionally discriminated against Lockridge on the basis of his race, he violated clearly established law set forth in 42 U.S.C. §§ 1981 and 1983, Title VII, and the Fourteenth Amendment. Therefore, I would affirm the district court's determination that Jones is not immune to suit in his individual capacity in this matter.

For the reasons cited above, I would affirm the district court's decision in all respects.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.