# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-2086

_____

Dean Birkeland, as trustee for the next of kin of John O. Birkeland

*Plaintiff - Appellee*

v.

John Edward Jorgensen, individually and acting in their official capacities as City
of Roseville Police Officers; Kyle Eckert, individually and acting in their official
capacities as City of Roseville Police Officers; City of Roseville

*Defendants - Appellants*

Joseph Robert Adams, individually and acting in their official capacities as City of
Roseville Police Officers

*Defendant*

_____

No. 19-2172

_____

Dean Birkeland, as trustee for the next of kin of John O. Birkeland

*Plaintiff - Appellant*

v.

John Edward Jorgensen, individually and acting in their official capacities as City
of Roseville Police Officers; Kyle Eckert, individually and acting in their official

capacities as City of Roseville Police Officers; City of Roseville; Joseph Robert Adams, individually and acting in their official capacities as City of Roseville Police Officers

*Defendants - Appellees*

_____

Appeals from United States District Court
for the District of Minnesota

_____

Submitted: June 17, 2020
Filed: August 20, 2020

_____

Before KELLY, ERICKSON, and STRAS, Circuit Judges.

_____

ERICKSON, Circuit Judge.

At approximately 10:30 p.m. on February 10, 2016, Officers John Edward Jorgensen and Kyle Eckert shot and killed John O. Birkeland ("Birkeland") in his home. Dean Birkeland, as trustee for the next-of-kin, brought this wrongful death action against Officers Jorgensen and Eckert as well as Sergeant Joseph Robert Adams and the City of Roseville. The district court granted summary judgment in favor of the officers and the City on all claims except the use of deadly force and "associated state-law claims." Both sides appeal. We grant the motion to dismiss the cross-appeal because we lack jurisdiction to review the grant of qualified immunity or the grant of official immunity under Minnesota state law. We reverse the district court on the denial of qualified immunity on the deadly force claim and also on the denial of official immunity on the state-law claims related to the use of deadly force.

## I.    Background

Birkeland lived in a one-bedroom apartment in Roseville, Minnesota.   At approximately 9:55 p.m. on February 10, 2016, each of his next door neighbors called 911, nearly simultaneously, to report a disturbance in Birkeland's apartment.  The neighbors made nearly identical reports of the sounds emanating from Birkeland's apartment: yelling, throwing things, and the sound of breaking glass.  Each noted similar disturbances in the past and noted that Birkeland might have mental health issues.

Dispatch records reflect that at 10:00 p.m. City of Roseville police officers were dispatched to the apartment to perform a welfare check.  En route, the officers were informed that while Birkeland had a misdemeanor warrant for his arrest, the warrant did not allow for an arrest in his home after 10:00 p.m.  When Officers Mitchell Christensen and Haivy Vang arrived at the apartment building, they were met at the security door by the reporting neighbors.  While stationed outside Birkeland's apartment door, Officer Christensen turned on his body cam audio and video.  After about 30 seconds, the audio recorder picked up what sounded like the occupant in the apartment saying, "Give me my fucking (unintelligible) please."  By the tone, the occupant–later confirmed to be Birkeland–sounded upset or distraught.

Officer Vang then knocked loudly on the door.  After receiving no response, Officer Vang shouted "John, it's the police. Open the door."  Over the next minute or so, the officers asked Birkeland eight times to open the door.  The first five times Birkeland responded, stating "No" followed by an assertion that he was "okay," "fine," or "good."  The last response the officers received from Birkeland was when he said, "No, I am fine (unintelligible) I'm trying to find my billfold and I got robbed again."

Over the course of the next fifteen to sixteen minutes, the officers attempted to re-engage Birkeland through the door by repeatedly telling Birkeland they could not leave until they knew he was okay. The officers repeatedly told Birkeland they did not want to, but would, forcibly enter if he continued to refuse to respond. Birkeland did not respond. Sergeant Adams arrived on the scene and he suggested they get a phone number for Birkeland and try to make contact with him by telephone. The phone numbers dispatch had were old and went unanswered.

After standing outside Birkeland's door for just over eighteen minutes, the officers decided to enter the apartment. Sergeant Adams used a battering ram to force open the door. By this time, Officer Jorgensen and his K-9 (Otis, a Belgian Shepherd) had arrived on scene. Once the door was opened, the officers stood outside the apartment for nearly five minutes, commanding Birkeland to come towards the door with his hands up. At one point, the officers informed Birkeland that they had a warrant and he was "under arrest." With Otis barking, Officer Jorgensen hollered into the apartment three times in close succession that he was going to send his dog into the apartment and warned that "the dog will find you and bite you." After receiving no response to any of these warnings or the other officers' commands to come towards the door, some of the officers entered the apartment. Otis, while leashed, assisted the officers in clearing the bathroom and kitchen. When Otis entered Birkeland's bedroom, he alerted to the closed sliding doors to a closet that was 2'6" wide and 7'5" long.

Officers Jorgensen and Eckert stood outside the closed closet with Otis. Officer Christensen and Sergeant Adams stood by the doorway at the entrance of the bedroom. Officer Jorgensen instructed Birkeland to, "Come out of the closet. You are going to get bit." When Birkeland did not comply, Officer Jorgensen slid open the left closet door and saw a person crouched in the closet. Officer Jorgensen described Birkeland's position as "crouched, ambushed-type position, leaning

forward." He testified that he could not (1) ascertain if there was another person in the closet; (2) tell if there was a weapon in the closet; or (3) see Birkeland's hands.

Otis was sent into the closet and Officer Jorgensen yelled, "Dog's on. Dog's on." Otis bit Birkeland's right knee, causing several linear cuts and ten puncture wounds. Birkeland responded by stabbing the left side of Otis's face with a knife, causing Otis to yelp. Officer Jorgensen ordered Birkeland to, "Let go of that knife! Let go! Let go! Let go now!" Within seconds, Officer Jorgensen fired three shots and Officer Eckert fired once at Birkeland. Birkeland was hit twice in the chest and once in the neck. The other shot went into the back wall of the closet. The shots were fired during the commotion of Officer Jorgensen attempting to pull Otis out of the closet after being stabbed, with Otis either still attached to Birkeland's knee or trying to bite Birkeland again. The parties dispute, and the video does not show, whether Birkeland started to come out of the closet on his own accord or because he was being pulled out by Otis.

Both Officers Jorgensen and Eckert testified then when they shot at Birkeland, they feared for their safety and the safety of the other officers. The trustee asserted that the officers' entry into the apartment was unlawful, that deploying the police dog was objectively unreasonable for a welfare check, and that Birkeland had a right to defend himself against the objectively unreasonably force used by the officers.

The district court granted summary judgment in favor of the officers and the City on all claims except for the reasonableness of the use of deadly force and related state-law claims. On appeal, the officers identified three issues: (1) Are Officers Jorgensen and Eckert entitled to qualified immunity on their use of deadly force; (2) Are Officers Jorgensen and Eckert entitled to official immunity on the state-law claims for assault, battery, wrongful death, and vicarious liability; and (3) Is the City of Roseville entitled to vicarious official immunity with regard to the state-law claims for assault, battery, wrongful death, and vicarious liability. The trustee's cross-appeal

seeks review of (1) the grant of qualified immunity as to the forcible entry into the apartment, the officers' decision to deploy a police dog to seize a suspect during a welfare check, and on the failure-to-supervise claim; (2) the grant of official immunity to Officers Jorgensen and Eckert on some of the state-law claims; and (3) the grant of vicarious official immunity to the City of Roseville on some of the state-law claims.

## II. Discussion

We first address the scope of our jurisdiction. "Ordinarily, this court lacks jurisdiction over a denial of summary judgment 'because such an order is not a final decision.'" Morgan v. Robinson, 920 F.3d 521, 523 (8th Cir. 2019) (en banc) (quoting Div. of Emp't Sec. v. Bd. of Police Comm'rs, 864 F.3d 974, 978 (8th Cir. 2017)). We have limited jurisdiction, however, to review the denial of summary judgment based on qualified immunity "to the extent that it turns on an issue of law." Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). We do not have jurisdiction "when a party complains that the district court should not have granted summary judgment based on qualified immunity." Mitchell v. Shearrer, 729 F.3d 1070, 1073 (8th Cir. 2013) (quoting Coleman v. Parkman, 349 F.3d 534, 537 (8th Cir. 2003)).

We may review other claims to the extent they are "inextricably intertwined" with an issue we have jurisdiction to review. Roberts v. City of Omaha, 723 F.3d 966, 975 (8th Cir. 2013) (quoting Lockridge v. Bd. of Trustees of Univ. of Ark., 315 F.3d 1015, 1012 (8th Cir. 2003) (en banc)). "An issue is inextricably intertwined with properly presented issues only when the appellate resolution of the collateral appeal necessarily resolves the pendent claims as well." Id. For example, we have jurisdiction over a municipal liability claim pursuant to 42 U.S.C. § 1983 if the plaintiff has failed to demonstrate a constitutional violation because that conclusion "necessarily resolves" the city's liability. Muir v. Decatur Cty., Iowa, 917 F.3d 1015, 1054 (8th Cir. 2019). Our court has also determined that because official immunity

under Minnesota law provides immunity from suit, we have jurisdiction to review issues of law related to the denial of official immunity. Johnson v. City of Minneapolis, 901 F.3d 963, 972 (8th Cir. 2018); See Sok Kong Tr. for Map Kong v. City of Burnsville, 960 F.3d 985, 996 (8th Cir. 2020) (reviewing denial of official and vicarious immunity when there was no genuine issue of fact); Thompson v. Dill, 930 F.3d 1008, 1013 (8th Cir. 2019) (analyzing our jurisdiction in case involving Missouri doctrine of official immunity).

Accordingly, we have jurisdiction to review issues of law pertaining to the denial of qualified immunity on the deadly force claim as well as issues of law regarding the denial of official immunity on the state-law claims related to the use of deadly force. We do not have jurisdiction to review the district court's grant of qualified immunity or its grant of official immunity.

Turning to the first issue–whether the facts, taken in the light most favorable to Birkeland, support a finding that Officers Jorgensen and Eckert violated Birkeland's clearly established constitutional rights when they shot and killed him–our precedent compels the conclusion that the officers' use of deadly force in this situation was not a violation of a clearly established right. Swearingen v. Judd, 930 F.3d 983, 988 (8th Cir. 2019). Regardless of whether Birkeland's movement toward the officers was voluntary, in light of the close proximity between the officers and Birkeland's location in the closet, Birkeland's failure to comply with Officer Jorgensen's commands to drop the knife, and Birkeland's stabbing of the police dog in the face with a knife, Birkeland posed a threat of serious physical harm to the officers and we cannot say that their "use of deadly force, even if just over the line of reasonableness, violated a clearly established right." Id. The district court erred in denying the officers qualified immunity on the deadly force claim.

As to state-law official immunity, we "review a summary judgment of official immunity based on facts the district court found adequately supported or likely assumed." Sok Kong, 960 F.3d at 996. "In Minnesota '[t]he official immunity doctrine provides that a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong.'" Hassan v. City of Minneapolis, Minn., 489 F.3d 914, 920 (8th Cir. 2007) (quoting Elwood v. Cty of Rice, 423 N.W.2d 671, 677 (Minn. 1988)). A law enforcement officer's decision to use deadly force is a discretionary decision for which official immunity applies absent a showing of a willful or malicious wrong. Id. (citing Maras v. City of Brainerd, 502 N.W.2d 69, 77 (Minn. Ct. App. 1993)). Malice under Minnesota law means an intentional act that a public official "had reason to believe is prohibited." Johnson, 901 F.3d at 972 (quoting State by Beaulieu v. City of Mounds View, 518 N.W.2d 567, 571 (Minn. 1984)).

Taking the trustee's allegations as true, a reasonable fact finder could not conclude the officers' conduct in this case was willful or malicious. As in Hassan, the facts in this record demonstrate that the officers had reason to believe they were in danger such that the use of deadly force against Birkeland was reasonable to protect themselves. 489 F.3d at 920. The undisputed facts establish that Birkeland was in possession of a knife, he refused to comply with the officer's commands to drop the knife, he was in a confined area in close proximity to the officers, and he used the knife to stab a police dog in the face. While the question of willful or malicious conduct is typically a jury question, Brown v. City of Golden Valley, 574 F.3d 491, 500 (8th Cir. 2009), under these undisputed facts, we conclude there is no genuine issue of material fact for a jury to decide and the officers are entitled to official immunity as a matter of law.

-8-

Because the officers' discretionary decisions are entitled to official immunity, the City of Roseville has no vicarious liability. Hayek v. City of St. Paul, 488 F.3d 1049, 1057 (8th Cir. 2007). Vicarious official immunity protects the City from liability arising from the officers' use of deadly force.

## III.  Conclusion

The district court erred in denying the officers qualified immunity and official immunity on the claims related to the use of deadly force. Because the officers are entitled to official immunity on the state-law claims, the City is entitled to vicarious official immunity.

We dismiss for lack of jurisdiction the cross-appeal challenging the district court's grant of qualified immunity and grant of official immunity, reverse the district court's decision that the officers were not entitled to qualified immunity on the deadly force claim, reverse the district court's decision denying official immunity on the state-law claims pertaining to the use of deadly force, and remand for further proceedings consistent with this opinion.

KELLY, Circuit Judge, concurring in part and dissenting in part.

The court concludes the defendant officers did not violate Birkeland's clearly established rights when they shot and killed him in his home after they arrived for a welfare check. Because I believe questions of fact preclude our drawing this conclusion, I respectfully dissent.[1]

The officers argue they reasonably feared for their safety after Birkeland stabbed Otis, the police K9. "The 'reasonableness' of a particular use of force must

---

[1]I agree that we do not have jurisdiction to hear the cross-appeal.

be judged from the perspective of a reasonable officer on the scene." Graham v. Connor, 490 U.S. 386, 396 (1989). There is "extensive case law setting forth the requirement that an officer must have probable cause to believe the suspect poses a threat of serious physical harm before using deadly force." Nance v. Sammis, 586 F.3d 604, 611 (8th Cir. 2009) (cleaned up). We view the facts in the light most favorable to the Trustee. See Chambers v. Pennycook, 641 F.3d 989, 904 (8th Cir. 2011).

When Jorgensen slid open the closet door, he saw Birkeland crouched on the ground. The closet was full of clothes, boxes, and other belongings. Birkeland did not come out of the closet when ordered, and Jorgensen saw him move his hand behind his back. Jorgensen said he was concerned that Birkeland might be reaching for a weapon. Jorgensen then sent Otis "to make a physical apprehension," in other words, "to bite." Otis bit Birkeland: the autopsy shows Birkeland suffered a wound deep enough to expose the bone. In response, Birkeland stabbed Otis with a knife. Jorgensen looked at Otis and saw no visible injuries.

Jorgensen yelled at Birkeland to "let go" or "put down" the knife. As the court acknowledges, "[t]he parties dispute, and the video does not show, whether Birkeland [then] started to come out of the closet on his own accord or because he was being pulled out by Otis." Ante at 5. The district court found that Otis was between the officers and Birkeland when the officers fired their shots. Eckert testified that he only fired one shot in part because he did not want to hit Otis.

These facts present a jury question as to whether the officers' stated fear for their safety was reasonable. Because "the parties dispute, and the video does not show" crucial moments before the officers killed Birkeland, a jury must determine the facts and weigh the officers' credibility. Birkeland was not suspected of a crime and had made no effort to actively resist arrest or flee the apartment; in fact, he had closed himself in his closet with no other exit. See Shannon v. Koehler, 616 F.3d 855,

-10-

862–63 (8th Cir. 2010) (affirming the denial of qualified immunity where the plaintiff was not fleeing, threatening officers, resisting arrest, or suspected of a serious crime). Although Birkeland had a knife, he was crouched in a closet and separated from the officers by a re-engaging police dog. A reasonable jury could question whether it was reasonable for an officer at the scene to believe "the totality of the circumstances justifie[d]" shooting and killing Birkeland in his closet. Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1081 (8th Cir. 1990).

I agree with the district court that "fact issues preclude a determination that, as a matter of law, the use of deadly force was reasonable" and so I respectfully dissent.

_____