# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-3769

_____

Division of Employment Security, State of Missouri

*Movant*

Donna Lancaster

*Plaintiff - Appellee*

v.

Board of Police Commissioners; David Epperson; Shawn Todd

*Defendants - Appellants*

Compass Health, Inc.

*Interested Party*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: February 8, 2017
Filed: July 28, 2017

_____

Before SMITH,[1] BENTON and SHEPHERD, Circuit Judges.

_____

[1]The Honorable Lavenski R. Smith became Chief Judge of the United States
Court of Appeals for the Eighth Circuit on March 11, 2017.

SHEPHERD, Circuit Judge.

Officers Shawn Todd and David Epperson were involved in a physical altercation with Kenny Gurley that resulted in Gurley's death. Donna Lancaster, Gurley's mother, brought this suit against both officers and the Board of Police Commissioners of Kansas City, Missouri (the "Board") asserting a number of federal and state law causes of action. The officers and the Board moved for summary judgment on the basis of state and federal immunity doctrines, and the district court granted that motion in part and denied it in part. Both officers and the Board sought interlocutory review, and we affirm in part and reverse in part.

## I. Background

Taken in the light most favorable to Lancaster as the non-moving party, see Chambers v. Pennycook, 641 F.3d 898, 904 (8th Cir. 2011), the facts are as follows. Police dispatch in Kansas City reported that prowlers had kicked in the door of a vacant house, and it provided a description of the suspects. Officers Todd and Epperson responded to the call. Upon arriving at the house a few minutes later, the officers heard a banging noise in the home and, as a result, believed a burglary was in progress. Officer Todd proceeded to the back yard. Although the record is unclear about his exact location, Officer Epperson stayed in the front of the house. Officer Todd announced his presence and instructed the people in the house to come out with their hands up. Shortly thereafter, Kenny Gurley and Robert Bowlin exited the back door of the home. Gurley was carrying a metal pipe.

Officer Todd instructed the men to stop and put their hands up, and they complied. Bowlin told Officer Todd that Gurley was having some mental issues and that Gurley was thinking about buying the property. Next, Officer Todd holstered his

firearm, walked up to Gurley, and punched him in the face. Because the punch did not appear to affect Gurley, Officer Todd called to Officer Epperson and requested a taser. Officer Epperson then came into the back yard, and Gurley—who still had the pipe in his hand with his hands in the air—turned his body toward Officer Epperson to see who was coming. Officer Epperson ran toward Gurley, yelled "Stop!," and shot him twice. Gurley died immediately as a result of the gunshot wounds.

Lancaster brought suit asserting the following claims: (1) In Count I, she asserts a cause of action under 42 U.S.C. § 1983 against Epperson for unreasonably inflicting deadly force; (2) In Count IV, she asserts a cause of action under § 1983 against both officers for violating Gurley's right to bodily integrity; (3) In Count V, she asserts a claim against the Board under § 1983 alleging the Board's failure to adequately train the officers caused the constitutional violations presented in Counts I and IV; (4) In Count VI, she asserts a state law wrongful death claim against both officers and the Board; and (5) In Count VII, she asserts a state law negligence claim against both officers and the Board.[2]

All defendants moved for summary judgment, asserting, as relevant, defenses of qualified immunity, official immunity, and sovereign immunity. The district court denied Epperson's motion for summary judgment based on qualified immunity on Counts I and IV, finding that it was objectively unreasonable for him to use deadly force under the circumstances. Likewise, the court denied Todd's motion for summary judgment on Count IV, finding that it was objectively unreasonable for Todd to punch Gurley in the face. On Counts VI and VII, the court found that the officers were not entitled to official immunity because, under Missouri law, this immunity is not available when the official acts with malice or in bad faith.

_____

[2]Counts II and III asserted assault and battery claims against the officers. These claims were dismissed for reasons not relevant to the instant appeal.

Accepting the plaintiff's version of the facts as true, the court ruled that a jury could find that the officers' actions were taken with these prohibited motives.

The court next denied the Board's motion on Count V because its only argument was derivative of the officers' arguments on Counts I and IV—that the Board could not be liable because the officers were not liable. Finally, although the court did find that the Board was entitled to sovereign immunity for the negligence claim in Count VII, it found that immunity did not extend to the wrongful death claim in Count VI which, under Missouri law, can be premised on "any act . . . which, if death had not ensued, would have entitled such person to recover damages in respect thereof." Mo. Rev. Stat. § 537.080(1). Hypothesizing that the failure to train allegations would suffice, if proven, to allow Gurley to recover from the Board had he not died, the court concluded that the Board was not protected by sovereign immunity from the wrongful death claim.

## II. Discussion

A party is entitled to summary judgment only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Ordinarily, we lack jurisdiction to hear an immediate appeal from a district court's order denying summary judgment, because such an order is not a final decision." Shannon v. Koehler, 616 F.3d 855, 860 (8th Cir. 2010) (internal quotation marks omitted). "[B]ut an immediate appeal is appropriate where summary judgment is denied on the grounds of sovereign immunity or qualified immunity, because immunity is effectively lost if a case is erroneously permitted to go to trial." Argonaut Great Cent. Ins. Co. v. Audrain Cnty. Joint Commc'ns, 781 F.3d 925, 929-30 (8th Cir. 2015) (holding that the collateral order doctrine permitted interlocutory review of a denial of a motion for summary judgment under Missouri's sovereign immunity statute). The scope of our review is limited to issues of law, so we apply a de novo standard. See Shannon, 616 F.3d at 861-62.

The officers contend that qualified and official immunity bar Lancaster's federal and state claims against them. The Board argues that qualified immunity bars Lancaster's federal claim, and that sovereign immunity bars the remaining state claim. Giving proper deference to the factual allegations made by Lancaster and supported by deposition testimony, we hold that the officers are not entitled to qualified immunity on the § 1983 claims or official immunity on the state law claims. With respect to the Board, we hold that it is not entitled to qualified immunity on Lancaster's § 1983 claim; however, the Board is protected by sovereign immunity on the wrongful death claim.

## A. The Officers

"Qualified immunity shields a government official from liability unless his conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mallak v. City of Baxter, 823 F.3d 441, 445 (8th Cir. 2016) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Our assessment of this issue follows the familiar two-part inquiry: we consider "whether the facts alleged or shown, construed most favorably to the plaintiff[], establish a violation of a constitutional right," and "whether that constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that the acts were unlawful." Small v. McCrystal, 708 F.3d 997, 1003 (8th Cir. 2013).

The facts alleged by Lancaster establish the violation of a constitutional right. "'Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment . . . .'" Chambers, 641 F.3d at 905 (alteration in original) (quoting Graham v. Connor, 490 U.S. 386, 394 (1989)). Therefore, with respect to both of the officers' actions, the critical legal inquiry "is whether the amount of force used was objectively reasonable under the particular

circumstances." Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009) (internal quotation marks omitted). In making this determination, "[w]e look to the specific circumstances, such as 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Peterson v. Kopp, 754 F.3d 594, 600 (8th Cir. 2014) (quoting Graham, 490 U.S. at 396).

According to Lancaster's version of the facts, Bowlin and Gurley were compliant with the officers' demands at all times. Notwithstanding this compliance, Todd holstered his weapon and punched Gurley in the jaw without provocation. Thereafter, Todd called out for a taser, and Epperson came around the corner of the house, yelled "Stop!," and immediately shot Gurley twice.[3] Thus, the "factors identified in Graham weigh against [the officers] and in favor of finding excessive use of force." Id. Though the officers believed the suspects were committing a burglary—a crime that could be considered severe in Missouri given that it is a felony, see Mo. Rev. Stat. § 569.160(2)—the nature of any crime that the officers suspected is overshadowed by the suspects' compliance, see Bell v. Kansas City Police Dep't, 635 F.3d 346, 347 (8th Cir. 2011) (per curiam) (holding that compliance with an officer's orders is a material fact when deciding whether the officer's use of force was reasonable). The two suspects exited the house when instructed to do so and, once they were in the back yard, they followed all of Todd's commands. For that reason, neither Gurley nor Bowlin posed an immediate threat to the officers and neither of them actively resisted arrest. So it was objectively unreasonable for the officers to punch and shoot a compliant suspect. See Tennessee v. Garner, 471 U.S. 1, 11 (1985) ("A police officer may not seize an unarmed, nondangerous suspect by shooting him dead."); Peterson, 754 F.3d at 600 (concluding that use of pepper spray on "a non-fleeing, non-resisting, non-violent misdemeanant" was unreasonable).

---

[3]All of these facts were supported by the deposition testimony of Robert Bowlin, who was one of three witnesses to the events.

Moreover, the constitutional right was clearly established at the time of the events in question. Although Supreme Court precedent "do[es] not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." White v. Pauly, 137 S. Ct. 548, 551 (2017) (alteration in original) (internal quotation marks omitted). "[C]learly established law should not be defined at a high level of generality"; rather, it "must be particularized to the facts of the case." Id. at 552 (internal quotation marks omitted). "Our prior cases have clearly established that use of [a] taser on a nonfleeing, nonviolent suspected misdemeanant [is] unreasonable." Brossart v. Janke, 859 F.3d 616, 625 (8th Cir. 2017) (alterations in original) (internal quotation marks omitted). Where a suspect is neither fleeing nor resisting arrest and does not pose a threat to the safety of the officers, it is "unreasonable for [an officer] to use more than de minimis force against" the suspect. Small, 708 F.3d at 1005 (concluding that it was clearly established that an officer could not tackle a docile suspect from behind without warning). In light of Gurley's compliance with the officers' demands, it was therefore beyond debate at the time of the events in question that the officers could not reasonably use more than de minimis force against Gurley.

These same assumed facts likewise resolve the officers' appeal on Counts VI and VII. Under the Missouri doctrine of official immunity, "[p]ublic officers acting within the scope of their authority are not liable for injuries arising from their discretionary acts or omissions, but they may be held liable for torts committed when acting in a ministerial capacity." State ex rel. Hill v. Baldridge, 186 S.W.3d 258, 259 (Mo. 2006). An officer's actions upon engaging a suspected criminal are generally discretionary, and thus they are protected by official immunity. See Seiner v. Drenon, 304 F.3d 810, 813 (8th Cir. 2002). But this defense is unavailable to an officer who acts in bad faith or with malice. Blue v. Harrah's N. Kansas City, LLC, 170 S.W.3d 466, 480 (Mo. Ct. App. 2005). Because Gurley was complying with the officers' demands at the time he was punched and shot, a jury could find that the officers acted with the prohibited bad faith or malice. See id. at 479-80.

The district court properly denied the officers' requests for qualified and official immunity.

## B. The Board

In Count V, Lancaster asserts a claim under § 1983 against the Board arguing its failure to adequately train the officers caused the constitutional violations alleged in Counts I and IV. She also asserts a state law wrongful death claim against the Board in Count VI. We affirm the district court's ruling on the § 1983 claim, but reverse its determination as to the state law claim because the Board is entitled to sovereign immunity under Missouri law.

Regarding Lancaster's § 1983 claim, the Board's sole argument on appeal is that it "is entitled to judgment as a matter of law because its officers did nothing wrong." Appellants' Br. 31; see Moore v. City of Desloge, 647 F.3d 841, 849 (8th Cir. 2011) ("This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." (internal quotation marks omitted)). Because the district court's individual liability determinations survive this appeal, see supra Part II(A), we reject this argument.

Turning to the state law claim, the Board argues that it is protected by sovereign immunity. We agree. In Missouri, sovereign immunity is the rule rather than the exception. See Mo. Rev. Stat. § 537.600(1) ("Such sovereign or governmental tort immunity as existed at common law in this state . . . , except to the extent waived, abrogated or modified by statutes . . . shall remain in full force and effect . . . ."). As "a legal subdivision of the state," a board of police commissioners has sovereign immunity for "the operation and maintenance of a police force." Fantasma v. Kansas City Bd. of Police Comm'rs, 913 S.W.2d 388, 391 (Mo. App.

1996).  Although the state has expressly waived this immunity in certain situations, Lancaster makes no assertion that any exception applies here.[4]

Instead, she argues that the Missouri wrongful death statute controls the outcome of this case.  Under Missouri Revised Statute section 537.080(1),

> Whenever the death of a person results from any act, conduct, occurrence, transaction, or circumstance which, if death had not ensued, would have entitled such person to recover damages in respect thereof, the person or party who, or the corporation which, would have been liable if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured . . . .

Adopting the reasoning of the district court, Lancaster contends that the broad wording of this statute—"Whenever the death of a person results from any act"—allows her failure-to-train claim to serve as the basis for wrongful death liability.  But Missouri law is clear that, in the absence of one of the exceptions, the Board is entitled to sovereign immunity on such a claim.  See Fantasma, 913 S.W.2d at 391 (holding that sovereign immunity barred a wrongful death claim against the Board and stating that "[t]he *only* question is whether [the Board's] sovereign immunity protection was waived" (emphasis added)).

---

[4]Based on our independent review of Missouri law, none of the exceptions are implicated by the present facts.  See Phelps v. City of Kansas City, 371 S.W.3d 909, 912 (Mo. Ct. App. 2012) ("A municipality has sovereign immunity from actions at common law tort in all but four cases: (1) where a plaintiff's injury arises from a public employee's negligent operation of a motor vehicle in the course of his employment; (2) where the injury is caused by the dangerous condition of the municipality's property; (3) where the injury is caused by the municipality performing a proprietary function as opposed to a governmental function; and (4) to the extent the municipality has procured insurance, thereby waiving sovereign immunity up to but not beyond the policy limit and only for acts covered by the policy." (citations omitted) (internal quotation marks omitted)).

The district court properly denied summary judgment to the Board on Lancaster's § 1983 claim, but we reverse its decision on the wrongful death claim and hold that the Board is protected by sovereign immunity.

## III. Conclusion

For the reasons stated above, we affirm the district court's ruling as to all claims against Officers Todd and Epperson. We likewise affirm the district court's decision that the Board is not entitled to summary judgment on the § 1983 claim. We reverse the district court's decision on the wrongful death claim, however, and hold that the Board is entitled to sovereign immunity on that claim.

———————