# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1002

_____

Donald Morgan

*Plaintiff - Appellee*

v.

Michael Robinson, Washington County Sheriff, an individual

*Defendant - Appellant*

Washington County, Nebraska

*Defendant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: November 15, 2017
Filed: February 2, 2018

_____

Before BENTON, SHEPHERD, and KELLY, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

After Donald Morgan ran against his boss Michael Robinson, the incumbent sheriff, in a primary election, Robinson terminated Morgan's employment as a deputy

with the Washington County, Nebraska Sheriff's Office for statements Morgan made during the campaign. Morgan then brought this First Amendment retaliation action under 42 U.S.C. § 1983, and Robinson moved for summary judgment on the basis of qualified immunity. The district court[1] denied Robinson's motion, and he appealed. We affirm.

## I. Background

Morgan is a deputy in the Washington County, Nebraska Sheriff's Department. Robinson is the elected sheriff for that county. In July of 2013, Morgan notified Robinson of his intentions to run against Robinson in the 2014 primary election. Throughout his campaign, Morgan made public statements concerning the operations of the sheriff's department and his plans to improve them. Robinson won the election, and he terminated Morgan's employment six days later, claiming that these statements violated the department's rules of conduct. In Morgan's termination letter, Robinson cited the following statements as the reasons for the disciplinary action:

1.  You continued to state that the communications system was not completed after 10 years of construction although the record reflects it was completed on time and under budget in 2006[.]

2.  You stated the Fire and Rescue agencies could not communicate and stated someone would be hurt or killed if it was not fixed although the Fire Chiefs submitted a letter to the local paper saying your comments were false.

3.  You continued to tell the public that morale at the Sheriff's Office was bad and that "all the employees were waiting for the day after I lost to see me walk out of the office". [sic] You also stated several deputies were actively looking for employment. This was

---

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

proven false when several of the Deputies were consulted and none were looking and did not know of any deputy looking for employment and I was overwhelmingly supported by the employees of the Sheriff's Office.

4.    You stated the K-9 had been taken from you for retribution when in fact you demanded the K-9 be taken because it "hindered your ability to do your job". [sic]

5.    You stated portable radio coverage was poor and continued to state the coverage was poor even after being shown the system coverage for portable radios was 99.2% county wide.

R. at 261.

Morgan initially filed a grievance under a labor contract that applied to his position, which he lost. He then filed this suit in district court alleging claims of retaliation, deprivation of due process, and breach of the labor contract. Applying the terms of the contract, the district court compelled arbitration of the breach of contract claim. The arbitrator ruled in Morgan's favor and reinstated his employment with the sheriff's department.

After returning to district court, Robinson filed the current motion for summary judgment, claiming that he was entitled to qualified immunity on Morgan's retaliation claim. The court denied the motion, ruling that Robinson was not entitled to qualified immunity because there were genuine disputes of material fact concerning the public value of Morgan's statements and whether the statements caused disruption in the operation of the sheriff's department. Because of these factual disputes, the court denied qualified immunity, concluding a jury could find that Morgan established a violation of his constitutional rights that was clearly established at the time of the incidents in question. Robinson appeals this decision.

## II. Discussion

On appeal, Robinson focuses the vast majority of his briefing on arguments related to the proper form of the qualified immunity analysis. In so doing, however, he neglects to realize that the Supreme Court has ascribed a unique test applicable to cases where a government employee alleges that his employer retaliated against the employee for exercising his First Amendment rights. In the first part of this test, we must discern whether the employee's speech is protected by the First Amendment: an inquiry that entails balancing the respective interests of the employee and the employer. See Lane v. Franks, 134 S. Ct. 2369, 2380-81 (2014). Next, because Robinson claims he is protected by qualified immunity, we apply the standard inquiry asking whether "the official violated a statutory or constitutional right, and [whether] the right was clearly established at the time of the challenged conduct." Id. at 2381 (internal quotation marks omitted); see also id. at 2383 (concluding that although the speech was protected, the employee's First Amendment rights were not violated "because the question was not 'beyond debate' at the time" the official took action (quoting Ashcroft v. Al-Kidd, 563 U.S. 731, 741 (2011)).

## A. Standard of Review

"A party is entitled to summary judgment only when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Div. of Emp't Sec. v. Bd. of Police Comm'rs, 864 F.3d 974, 977-78 (8th Cir. 2017) (quoting Fed. R. Civ. P. 56(a)). "[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (second alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). "Ordinarily, we lack jurisdiction to hear an immediate appeal from a district court's order denying summary judgment, because such an order is not a final decision." Div. of Emp't Sec., 864 F.3d at 978 (internal quotation marks

omitted). Where the moving party claims entitlement to qualified immunity, however, an appeal may be taken "because immunity is effectively lost if a case is erroneously permitted to go to trial." Id. (internal quotation marks omitted). "The scope of our review is limited to issues of law, so we apply a de novo standard." Id.

## B. Whether Morgan's Speech is Protected

"The Supreme Court has developed two lines of cases that assess how to balance the First Amendment rights of government employees with the need of government employers to operate efficiently." Thompson v. Shock, 852 F.3d 786, 791 (8th Cir. 2017). Where, as here, a case involves "overt expressive conduct," our court applies "the balancing test as found in the line of cases following Pickering and Connick. The typical Pickering-Connick case involves a government employee causing workplace disruption by speaking as a citizen on a matter of public concern, followed by government action adversely affecting the employee's job." Id. (internal citation omitted).

The first question in this analysis asks whether the employee's speech was made as a citizen on a matter of public concern. Lane, 134 S. Ct. at 2378; accord Anzaldua v. Ne. Ambulance & Fire Prot. Dist., 793 F.3d 822, 833 (8th Cir. 2015). Where this question is answered in the affirmative, the court next asks whether the employer "had an adequate justification for treating the employee differently from any other member of the general public." Garcetti v. Ceballos, 547 U.S. 410, 418 (2006); accord Anzaldua, 793 F.3d at 833 ("[I]f the possibility of a First Amendment claim has arisen, then our second inquiry is to ask whether [the employer] has produced evidence to indicate the speech had an adverse impact on the efficiency of the [employer's] operations." (alterations in original) (internal quotation marks omitted)). Finally, if each party has met their burden, the court applies the

-5-

Pickering-Connick test[2] to balance the competing interests.  Anzaldua, 793 F.3d at 835.

1. Whether the speech was made as a citizen on a matter of public concern.

"Speech by citizens on matters of public concern lies at the heart of the First Amendment, . . . [and] [t]his remains true when speech concerns information related to or learned through public employment." Lane, 134 S. Ct. at 2377.  Indeed, "[t]here is considerable value . . . in encouraging, rather than inhibiting, speech by public employees [because] '[g]overnment employees are often in the best position to know what ails the agencies for which they work.'" Id. (third alteration in original) (quoting Waters v. Churchill, 511 U.S. 661, 674 (1994)).  If the employee was not speaking as a citizen on a matter of public concern, he or she "has no First Amendment cause of action based on his or her employer's reaction to the speech." Garcetti, 547 U.S. at 418.  On the other hand, if this preliminary question is answered in the affirmative, "then the possibility of a First Amendment claim arises." Id.

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147-48 (1983).  "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of

_____

[2]The ultimate goal of this test is to balance the employee's First Amendment rights with the employer's corresponding right to control office affairs. See Pickering v. Bd. of Ed., 391 U.S. 563, 568 (1968).  To that end, we have stated that "under Pickering[-]Connick, this court's task involves an analysis of (1) the general authority and responsibilities of the employing government entity, (2) the nature and character of the specific employer-employee relationship, (3) the speech involved and (4) evidence tending to establish the speech's impact on the efficient operation of the government entity." Nord v. Walsh Cnty., 757 F.3d 734, 740 (8th Cir. 2014).

legitimate news interest; that is, a subject of general interest and of value and concern to the public." Snyder v. Phelps, 562 U.S. 443, 453 (2011) (internal citations omitted) (internal quotation marks omitted). By contrast, where speech primarily serves the personal interests of the speaker, it warrants no protection because it has little value to the public at large. Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 762 (1985). More specifically, a statement is personal where it does "nothing to inform the public about any aspect of the [government entity's] functioning or operation." City of San Diego v. Roe, 543 U.S. 77, 84 (2004).

We spend little time on this part of the test because Robinson's counsel conceded in his brief and during argument that the speech was made as a citizen on matters of public concern. For reasons that will become clear later in this opinion, we pause only long enough to verify that this is a legally sound concession. First and foremost, "the First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office." Burson v. Freeman, 504 U.S. 191, 196 (1992) (internal quotation marks omitted). Thus, proceeding from Connick, the context in which Morgan made these statements—his political campaign—supports the view that they pertained to matters of public concern.

Next, the content of the statements shows their import to the community as a whole. Of the statements, at least three concerned the communications and radio systems that emergency personnel used in Washington County. While one could conceivably argue that the statements expressed Morgan's personal dissatisfaction with Robinson, these comments did not involve a "personal conflict," Bailey v. Dep't of Elementary & Secondary Ed., 451 F.3d 514, 520 (8th Cir. 2006), nor were they the result of "an already strained relationship" with Robinson, Anzaldua, 793 F.3d at 833 (internal quotation marks omitted); cf. Connick, 461 U.S. at 148 (finding statements to concern private matters where made "to gather ammunition for another round of controversy with [the employee's] superiors"). At most, the statements were critical of the manner in which Robinson performed his duties as county sheriff, and

"[s]peech that criticizes a public employer in his capacity as a public official . . . addresses matters of public concern." Belk v. City of Eldon, 228 F.3d 872, 878 (8th Cir. 2000). Therefore, the content of the statements supports the conclusion that they were matters of public concern.

Finally, the form of these statements demonstrates their public import. Many of these statements were made to a group of attendees during a forum held at a local high school. Other statements were made on Morgan's website, which was obviously open to the public. Still others were published in a local newspaper. None of them, however, were disseminated to a closed audience or reported as part of Morgan's official job duties. Cf. Dun & Bradstreet, 472 U.S. at 762; Garcetti, 547 U.S. at 421.

Accordingly, Morgan's statements were made as a citizen on matters of public concern.

2. Whether Robinson has shown justification for Morgan's termination.

Because Morgan's statements were on matters of public concern, "the possibility of a First Amendment claim arises," and the court must turn to the question of whether Robinson "had an adequate justification for treating [Morgan] differently from any other member of the general public." Garcetti, 547 U.S. at 418. No one disputes that Robinson has an interest in maintaining the efficient operation of the Washington County Sheriff's Office. See Pickering, 391 U.S. at 568. Indeed, just like their private counterparts, government employers "need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." Lane, 134 S. Ct. at 2377 (internal quotation marks omitted). Importantly, there is no "necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." Connick,

461 U.S. at 152. But "a stronger showing may be necessary if the employee's speech more substantially involved matters of public concern." Id.

Our precedent has been inconsistent on the level of evidence of disruption an employer must present to satisfy its burden. See Anzaldua, 793 F.3d at 834 & n.3. For many years, the court regularly denied qualified immunity prior to applying the Pickering-Connick test where the employer failed to present sufficient evidence of actual workplace disruption. See, e.g., Burnham v. Ianni, 119 F.3d 668, 680 (8th Cir. 1997) (en banc) ("The government employer must make a substantial showing that the speech is, in fact, disruptive before the speech may be punished. . . . [W]e have never granted any deference to a government supervisor's bald assertions of harm based on conclusory hearsay and rank speculation."); Belk, 228 F.3d at 881 ("Where there is no evidence of disruption, resort to the Pickering factors is unnecessary because there are no government interests in efficiency to weigh against First Amendment interests."). More recently, however, we have relied on Connick's statement that it is not necessary "for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action," 461 U.S. at 152, to hold that "'[e]vidence of actual disruption . . . is not required in all cases.'" Anzaldua, 793 F.3d at 833 (alterations in original) (quoting Bailey, 451 F.3d at 521); see also Nord, 757 F.3d at 743.

But no case questions Connick's proclamation that "a stronger showing [of disruption] may be necessary if the employee's speech more substantially involved matters of public concern." 461 U.S. at 152; see also Hemminghaus v. Missouri, 756 F.3d 1100, 1113 n.11 (8th Cir. 2014) ("We also note the record indicates the majority of Hemminghaus's blog posts related to her personal dispute with the nanny and did not focus on child abuse as a public problem, lessening the burden on defendants."). Indeed, save for Nord, in every case in which we have noted that evidence of actual disruption is not necessary, we have gone on to find sufficient evidence of such disruption. See, e.g., Anzaldua, 793 F.3d at 834 ("[A]lthough we do not require

actual evidence of disruption in all cases, it exists here."); Hemminghaus, 756 F.3d at 1113 ("Hemminghaus's actions are sufficient evidence of disruption." (internal quotation marks omitted)); Bailey, 451 F.3d at 521 ("Although such evidence is not required, sufficient evidence of disruption exists in this case.").

Given the relative strength of Morgan's showing that the statements were made in the public interest, see Burson, 504 U.S. at 196, Robinson faces a higher burden to justify Morgan's termination, see Connick, 461 U.S. at 152. Understandably, much of Robinson's argument is devoted to factually analogizing the present case to Nord in an attempt to show that he "could have reasonably believed that the speech would be at least potentially damaging to and disruptive of the discipline and harmony of and among co-workers in the sheriff's office and detrimental to the close working relationships and personal loyalties necessary for an effective and trusted local policing operation." Nord, 757 F.3d at 743. To be sure, there are similarities between this case and the facts that were before us in Nord. There, deputy sheriff Ron Nord ran against the incumbent sheriff, Lauren Wild, in an election. Id. at 737. After Nord lost, Wild terminated Nord on the basis of comments Nord made during the election, and Nord then filed suit under § 1983, asserting a First Amendment retaliation claim. Id. at 738.

There are, however, critical distinctions between Nord and the present case: the campaign statements at issue there concerned the sheriff's personal affairs. Id. at 742. As we stated:

> Nord had indicated to voters that Wild's health was bad and that he should not be running for office because his health was so bad. And, Wild stated that he heard "[o]ne report . . . that my wife didn't even want me to run." Wild also stated that another report indicated that he had said "[he] was going to resign as sheriff in two years and run for [a state senator's] position as senator."

Id. (first, second, and third alterations in original). As a result, we concluded "that at least some of Nord's campaign speech does not merit First Amendment protection." Id. at 743. Nord is therefore consistent with Connick insofar as Nord required a lesser showing of disruption because the speech at issue was, at most, only tangentially related to public concern. Cf. Connick, 461 U.S. at 152.

Here, by contrast, Morgan's campaign statements were all matters of public concern, and Robinson has made an extremely minimal showing of actual or potential disruption. As evidence, Robinson presented the following:

1. Ron Bellamy's arbitration testimony that Morgan's statements had created "uneasiness" and that some employees mentioned "they felt like [Morgan] was putting them in a position that they didn't want to be in." R. at 235.

2. Phil Brazleton's arbitration testimony that Morgan was terminated because of "the general lack of morale that was being spread due to a difference of opinion on how business should run." R. at 245.

3. Kevin Willis's arbitration testimony that Morgan was terminated because Willis "felt that Mr. Morgan undermined the . . . public trust and faith." R. at 248. And,

4. Shawn Thallas's arbitration testimony that Morgan was terminated because of "turmoil . . . being uncomfortable . . . with everything that's been going on . . . there's uneasiness in all areas at all times." R. at 252.

Absent from this evidence is any concrete showing of the actual impact of Morgan's speech on the efficiency of the sheriff's office. Cf. Shockency v. Ramsey Cnty., 493 F.3d 941, 949-50 (8th Cir. 2007) ("Qualified immunity cannot be based on a simple assertion by the employer . . . without supporting evidence of the adverse

effect of the speech on workplace efficiency." (alteration in original) (internal quotation marks omitted)).  For example, in <u>Anzaldua</u>, we found sufficient evidence of disruption where coworker declarations specifically demonstrated the employees' reactions and how the statements affected the operation of the fire department.  793 F.3d at 834-35.  Likewise, in <u>Hemminghaus</u>, the employee herself proffered evidence of how her statements impacted her relationship with her employer.  756 F.3d at 1113.  Here, by contrast, the cited statements are extremely general in nature, and none of them point to a single concrete incident of disruption.  <u>See</u> <u>Sexton v. Martin</u>, 210 F.3d 905, 912 (8th Cir. 2000) ("Mere allegations of disruption are insufficient to put the <u>Pickering</u> balance at issue.").  Additionally, as noted by the district court, several of Morgan's statements were made a number of months prior to the election.  When combined with Robinson's testimony that Morgan's performance has, at all relevant times, been satisfactory, Robinson's failure to produce evidence of a discrete incident of disruption due to Morgan's campaign statements is significant.  <u>Cf.</u> <u>Burnham</u>, 119 F.3d at 680 (noting that plaintiff's own admissions refuted its allegations of workplace disruption).

Finally, we note in passing that intra-office comments about "turmoil" and "difference[s] of opinion on how business should run" seem likely to be made any time an employee runs against his or her employer in an election.  Other employees in the office may inevitably feel torn between the incumbent and the challenging employee given their personal relationships with each other.  And this is especially true in a smaller county.  Accordingly, these comments provide no "adequate justification for treating the employee differently from any other member of the general public."  <u>See</u> <u>Garcetti</u>, 547 U.S. at 418.

Because Robinson has failed to show an adequate justification for his actions, we hold that Morgan's speech is protected by the First Amendment and there is no need to resort to the <u>Pickering</u>-<u>Connick</u> balancing test.  <u>See</u> <u>Lane</u>, 134 S. Ct. at 2381.

## C. Qualified Immunity

We now turn to the question of whether Morgan is entitled to qualified immunity, which requires us to determine whether Robinson's termination of Morgan violated a right secured by the First Amendment and whether that right was clearly established at the time of the termination. See id. Since we have determined that Morgan's speech was protected, his termination was an adverse employment action sufficient to violate his First Amendment rights. See Heffernan v. City of Paterson, 136 S. Ct. 1412, 1416 (2016) ("The First Amendment generally prohibits government officials from dismissing or demoting an employee because of the employee's engagement in constitutionally protected political activity."). We therefore turn to the second inquiry, under which "[t]he relevant question . . . is this: Could [Robinson] reasonably have believed, at the time he fired [Morgan], that a government employer could fire an employee on account of" the employee exercising his First Amendment right to free speech during a run for political office, where that speech had no disruptive impact on office functioning? Lane, 134 S. Ct. at 2381. The answer to this question is an unequivocal "no."

In Bearden v. Lemon—a case we ultimately decided on jurisdictional grounds—we commented that "[t]he right not to be terminated for [exercising one's right to free] speech has been clearly established for some time." 475 F.3d 926, 929 (8th Cir. 2007). In support of this statement, we cited to Hartman v. Moore, 547 U.S. 250, 256 (2006) ("[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out . . . ."), and Rankin v. McPherson, 483 U.S. 378, 383 (1987) ("It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech.").

Taken alone, Bearden may be insufficient to define the contours of a constitutional right and alert a reasonable official that a termination violates that

-13-

right.  See Nord, 757 F.3d at 740.  This is especially true considering intervening Supreme Court precedent directing lower courts "not to define clearly established law at a high level of generality."  Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011).  But general statements of the law may, in some circumstances, "giv[e] fair and clear warning" to government officials where the unlawfulness of the challenged action is readily apparent in light of pre-existing law.  White v. Pauly, 137 S. Ct. 548, 552 (2017).

No one disputes that "political speech . . . is central to the meaning and purpose of the First Amendment," Citizens United v. F.E.C., 558 U.S. 310, 329 (2010), or that "the First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office," Burson, 504 U.S. at 196 (internal quotation marks omitted).  For this reason, "the [Supreme] Court has frequently reaffirmed that speech on public issues occupies the 'highest rung of the h[ie]rarchy of First Amendment values,' and is entitled to special protection."  Connick, 461 U.S. at 145 (quoting NAACP v. Claiborne Hardware Co., 458 U.S. 886, 913 (1982)).  Indeed, this is the very foundation upon which the Supreme Court decided Pickering:

> What we do have before us is a case in which a teacher has made erroneous public statements upon issues then currently the subject of public attention, which are critical of his ultimate employer but which are neither shown nor can be presumed to have in any way either impeded the teacher's proper performance of his daily duties in the classroom or to have interfered with the regular operation of the schools generally.  In these circumstances we conclude that the interest of the school administration in limiting teachers' opportunities to contribute to public debate is not significantly greater than its interest in limiting a similar contribution by any member of the general public.

391 U.S. at 572-73.

Therefore, public officials have been on notice since the Court decided Pickering in 1968 that they may not sanction an employee for uttering protected speech when that speech neither impacts the employee's official duties nor detracts from office efficiency. This is all the more true given the context in which Morgan spoke here: a political campaign, where "the First Amendment has its fullest and most urgent application." Burson, 504 U.S. at 196. To the extent that there remains any ambiguity, we hold that a public employee cannot be terminated for making protected statements during a campaign for public office where that speech has no demonstrated impact on the efficiency of office operations. Cf. Smith v. Gilchrist, 749 F.3d 302, 313 (4th Cir. 2014) ("In sum, a reasonable DA in Gilchrist's position would have known that he could not fire an ADA running for public office for speaking publicly in his capacity as a candidate on matters of public concern.").

## III. Conclusion

For the above reasons, the district court correctly denied Robinson's motion for summary judgment.

——————————————————————