# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-2074

_____

Catrina Johnson

*Plaintiff - Appellee*

v.

City of Minneapolis, a government entity and political subdivision of the State of
Minnesota; Robert Heiple, in his individual capacity acting under color of law as a
Minneapolis Police Officer

*Defendants - Appellants*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 15, 2018
Filed: August 24, 2018

_____

Before SHEPHERD, MELLOY, and GRASZ, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Fearing for her safety, Catrina Johnson called the police. One of the officers
responding to the scene believed that Johnson kicked him. She had not, but Johnson
was arrested based on that officer's belief. Charges against Johnson were eventually
dropped and the officer now admits that Johnson did not kick him. Johnson sued the

officer and the City of Minneapolis. The district court[1] held that the arrest violated Johnson's clearly established constitutional rights. In addition, it held that Johnson's state-law claims stemming from the arrest could proceed to trial. We agree and affirm.

I.

When a denial of immunity is appealed, "[o]ur jurisdiction extends only to abstract issues of law." Thompson v. City of Monticello, No. 16-4080, 2018 WL 3322315, at *2 (8th Cir. July 6, 2018) (internal quotation marks omitted); see also Div. of Empl't Sec. v. Bd. of Police Comm'rs, 864 F.3d 974, 978 (8th Cir. 2017) (state-law immunity appeal "limited to issues of law"). "Thus, we must accept the summary judgment facts as described by the district court because evidentiary determinations are not presently appealable." Craighead v. Lee, 399 F.3d 954, 960 (8th Cir. 2005).[2]

With these principles in mind, we turn to the facts of this case.

A.

Johnson called 911 in July 2013 because her 17-year old son, Jareese, was acting violently. Two officers—Officers Buck and Heiple—responded to the call. Prior to the officers arriving, a neighbor, Mark Moriarty, entered Johnson's apartment after hearing a dispute. (Moriarty was present throughout the course of events,

---

[1]The Honorable John R. Tunheim, Chief Judge, United States District Court for the District of Minnesota.

[2]We are, however, not bound by facts found by the district court which are "blatantly contradicted by the record." Burnikel v. Fong, 886 F.3d 706, 709 (8th Cir. 2018) (internal quotation marks omitted).

according to the district court.)  When officers arrived, Johnson let them into her apartment building.  She was clutching a hammer as a means of protecting herself from Jareese.  She  accompanied the officers down the hallway to her apartment, which is where the officers first encountered Jareese.  The officers then proceeded to question Jareese and Johnson separately.  During this time, Johnson informed Officer Buck (who was questioning her) that "Jareese threatened [her] and [she] wanted Jareese removed from the home."

Officer Buck then moved to arrest Jareese, who was located just outside of Johnson's apartment in the hallway.  Jareese resisted, so Officer Buck and Officer Heiple engaged in a take down of Jareese.  When Jareese was brought to the floor, Officer Heiple was facing away from the Johnson's apartment while Officer Buck was facing towards it.  And, as the district court recounts, "Johnson had retreated further into her apartment to give the [o]fficers room."

According to the district court, "[a]fter the 'take down,' Officer Heiple felt a sharp pain like an 'explosion' in his right calf."  He checked with Officer Buck  to ensure that Jareese was "handcuffed and secured" before turning around and asking Johnson if she had kicked him.  She said no.  Officer Heiple again asked the question, and, again, Johnson said no.  But this was to no avail.  Although Officer Heiple had not seen Johnson kick him—nor had he seen if she was in a position to even reach him, given that she had fallen back into the apartment—he assumed she had.  And Officer Heiple arrested Johnson immediately after her second denial that she had kicked him.

One eyewitness was present during the takedown of Jareese.  That eyewitness, Moriarty, confronted Officer Heiple after he arrested Johnson.  Moriarty asked Officer Heiple twice if he was sure Johnson had kicked him, telling him "[i]t doesn't seem to make sense that she could have."  D. Ct. Op. at 5 (internal quotation marks omitted). Officer Heiple said he was sure because "[i]t"—meaning his calf—"hurts."

Id. (internal quotation marks omitted). Part of Moriarty's disbelief stemmed from the relative positions of Johnson and Officer Heiple. In his view, Johnson "would have had to give some powerful kind of soccer kick . . . around [Officer Heiple] to kick his other side." Id. (first alteration in the original). His disbelief was also fueled by the fact that Johnson could not inflict pain on the level Officer Heiple felt because "Johnson's shoes were" something akin to "'soft slipper[s].'" Id. (alteration in original). Officer Buck, who was facing Johnson at the time of Jareese's takedown, later testified that he never saw Johnson kick Officer Heiple because he was "focused on placing Jareese in handcuffs."

Both Officer Heiple and Johnson were hospitalized after the arrest. Officer Heiple later learned he had a "rupture or sprain of his gastrocnemius muscle" which caused his pain. He now concedes Johnson did not kick him. Johnson spent four hours in the emergency room and then three days in jail before being released. Her arrest and subsequent imprisonment were the basis for an eight-count district court complaint against the City of Minneapolis and Officer Heiple in his individual capacity. At issue on this appeal are Counts IV through VIII of that complaint. Count IV alleges, under 42 U.S.C. § 1983, unreasonable seizure in violation of the Fourth and Fourteenth Amendments. Counts V and VII allege Minnesota state-law claims for false arrest and false imprisonment against Officer Heiple, while Counts VI and VIII lodge parallel claims against Minneapolis.

Officer Heiple and Minneapolis ("appellees") moved for partial summary judgment on Counts IV through VIII before the district court. The district court denied the motion in full. Specifically, the district court declined to dismiss Count IV on the basis of qualified immunity and denied dismissal of Count V-VIII because of official immunity—a Minnesota state immunity doctrine.

Minneapolis and Office Heiple now appeal.

II.

We first turn to the question of qualified immunity. We review de novo "(1) whether . . . the conduct of [Officer Heiple] violated a constitutional right, and (2) whether that constitutional right was clearly established at the time of the incident such that a reasonable officer would have known his or her actions were unlawful." Neal v. Ficcadenti, No. 17-2633, 2018 WL 3397636, at *3 (8th Cir. July 12, 2018).

A.

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. Traditionally, then, "the government [is] prohibited from search and seizure absent appearing before a magistrate and, under oath, providing evidence of the suspected offense and particularly describing the . . . persons or things to be seized." Laura K. Donohue, The Original Fourth Amendment, 83 U. Chi. L. Rev. 1181, 1185 (2016). But, "reflect[ing] the ancient common-law rule," warrantless arrest is consistent with the Fourth Amendment so long as it is supported by probable cause. United States v. Watson, 423 U.S. 411, 418 (1976). Johnson contends that her right to be free from unreasonable seizure was violated because she was arrested by Officer Heiple without a warrant or probable cause.

Appellees contend otherwise. They argue that the arrest was supported by probable cause, meaning that "the totality of the circumstances at the time of the arrest [were] sufficient to lead a reasonable person to believe that [Johnson] [had] committed . . . an offense." Hoyland v. McMenomy, 869 F.3d 644, 652 (8th Cir. 2017) (internal quotation marks omitted). And because qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," Carroll v. Carman, 135 S. Ct. 348, 350 (2014) (per curiam) (internal quotation marks omitted), a "mistaken but objectively reasonable belief [Johnson] committed a

criminal offense"—arguable probable cause—is enough to entitle Officer Heiple to qualified immunity, McMenomy, 869 F.3d at 652 (internal quotation marks omitted).

Officer Heiple believed that Johnson kicked him. Appellant's Br. 6-8. There is no question (and Johnson does not contest) that assaulting a police officer is a crime under Minnesota law.[3] Thus, our inquiry is not whether it was reasonable for an officer to believe a specific act constituted a violation of the law, cf. Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005), or whether it was reasonable for an officer to believe a suspect had the requisite mindset (or *mens rea*) for a criminal violation, cf. Galarnyk v. Fraser, 687 F.3d 1070, 1075 (8th Cir. 2012). Instead, our inquiry here is whether it was reasonable to believe that the purported act (or *actus reus*), a kick, happened in the first place. Framed differently, the question is "was it objectively reasonable for [Officer Heiple] to mistakenly believe, under the totality of the circumstances, that [Johnson]" kicked him? McMenomy, 869 F.3d at 652.

We do not believe so. "Considering the totality of the circumstances," Officer Heiple did not make an "entirely reasonable inference" that Johnson had kicked him. District of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018) (internal quotation marks omitted). In Wesby, the Supreme Court assessed both the scene which officers confronted and the conduct and reactions of those individuals they encountered before determining officers had probable cause. 138 S. Ct. at 586-88. We do the same and find that there was not a "substantial chance" on these "historical facts" that Johnson kicked Officer Heiple. Id. at 586 (internal quotation marks omitted).

We start with the scene the officers responded to. They were first let into the apartment building by Johnson. At that time, they observed Johnson's physical

---

[3]Johnson was arrested for Obstructing Legal Process and Assault in the Fourth Degree.

appearance and attire—5'4", disabled, "weighing about 140 pounds," and wearing a "nightgown" and soft slippers. She was carrying a hammer at the time, but, as the district court recounts, this was because she had been threatened by Jareese.[4] Very soon after being let in, officers moved to arrest Jareese. Officer Buck went to the apartment hallway to arrest Jareese after speaking with Johnson. Because Jareese resisted, officers had to bring Jareese down to the floor. At the time of Jareese's take down, Officer Heiple's back was to Johnson. She was still in the apartment and, in fact, she had backed up farther to give officers room to maneuver. It was during this take down that Officer Heiple felt the "explosi[ve]" pain in his calf. As the district court recounts, it was a charged scene during the arrest, with Johnson in a "heightened emotional state." At no time, however, did Johnson disobey instructions from officers or get in their way. Cf. Ehlers v. City of Rapid City, 846 F.3d 1002, 1010 (8th Cir. 2017) (suspect disobeyed clear instructions to step away from scene where family member was being arrested). More importantly though, at the time Officer Heiple felt pain, he only knew that Johnson was at some distance behind him. He had no direct knowledge that Johnson, at 5'4", was within a range to even reach him—much less within a range to deliver a blow that caused explosive pain given her stature.

Next, we consider Johnson's "reaction to the officers." Wesby, 138 S. Ct. at 586-87. After ensuring Jareese was secure, Officer Heiple asked Johnson twice if she had kicked him. She answered no each time, and nothing in the facts the district court found suggested she was evasive in her answers. Cf. id. at 587 ("[S]uspect's untruthful and evasive answers to police questioning could support probable cause." (internal quotation marks omitted)). Nothing, as well, indicated she engaged in "deliberately furtive actions" or "[u]nprovoked flight." Cf. id. (internal quotation

---

[4]Underscoring this point, there are no facts the district court found suggesting officers asked her to put the hammer down or turn it over.

marks omitted). Yet Johnson was arrested immediately after the second time she denied kicking Officer Heiple.[5]

Appellees argue it is a mistake to focus on *all* of the circumstances. Despite strong evidence that Johnson would be unable to deliver a kick inflicting explosive pain, they argue that Johnson's emotional state and her undetermined position behind Officer Heiple constituted arguable probable cause to arrest Johnson for assaulting Officer Heiple. To start, this approach runs counter to the Supreme Court's directive that probable cause should be assessed on "the whole picture." Id. at 588 (internal quotation marks omitted); see also Florida v. Harris, 568 U.S. 237, 244 (2013) (describing probable cause as a "flexible, all-things-considered approach"). But even if we were to cleave off appellees' desired facts from the whole picture—in other words, to undertake a "divide-and-conquer analysis"—we still do not get to arguable probable cause. Wesby, 138 S. Ct. at 588 (internal quotation marks omitted).

No doubt, the facts appellees direct our attention to raise suspicion. But probable cause "has come to mean more than bare suspicion." Brinegar v. United States, 338 U.S. 160, 175 (1949). There must be "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person . . . in believing in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979). Here, by the appellees' admission, the quantum of facts "within [Officer Heiple's] knowledge," id., were only a shade above wrong place, wrong time. As previously noted, appellees admit that Officer Heiple arrested Johnson because of generally where she was positioned and her expression of emotion at her son's arrest. Cf. United States

_____

[5]While probable cause is "determined at the moment the arrest was made," and "later developed facts are irrelevant to the probable cause analysis for an arrest," Fisher v. Wal-Mart Stores, Inc., 619 F.3d 811, 816 (8th Cir. 2010) (internal quotation marks omitted), we note that Moriarty reiterated his disbelief twice to Officer Heiple after the arrest to no effect as well.

v. Evans, 851 F.3d 830, 836 (8th Cir. 2017) (suspect's "presence near the location of [crime] . . . did not by itself incriminate him")  At their core, "[Johnson's] actions [were] too ambiguous to raise more than a generalized suspicion of involvement in criminal activity."  Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013) (internal quotation marks omitted).

In the end, there is one factor which cuts decisively against arguable probable cause:  Officer Heiple did not observe Johnson committing a criminal act—and nobody told him that Johnson did either.  Cf. Illinois v. Gates, 462 U.S. 213, 242 (1983) ("[A]n officer may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." (internal quotation marks omitted)).[6]  Thus, this is not a case "where . . . the sole issue [was] the defendant's mens rea" which would have turned on Officer Heiple's ability to "make [a] credibility assessment[] on the spot."  Wesby v. District of Columbia, 816 F.3d 96, 106 (D.C. Cir. 2016) (Kavanaugh, J., dissenting from denial of rehearing en banc).  "Indeed, the law is particularly tolerant with respect to the *mens rea* element of a crime on a probable cause showing."  Ganek v. Leibowitz, 874 F.3d 73, 86 (2d Cir. 2017).

Instead, the decisive issue here was the *actus reus*.  And the bread and butter of arguable probable cause is some observation—either by officers personally or by an eyewitness or victim whose account is communicated to officers—of the *actus*

---

[6]It is well-established in this circuit that "officers are generally entitled to rely on the veracity of information supplied by the victim of a crime."  Peterson v. City of Plymouth, 60 F.3d 469, 474–75 (8th Cir. 1995).  And we have given officers a wide berth for reliance on other reports of crime.  See, e.g., Chevallier v. Hand, 722 F.3d 1101, 1104–05 (8th Cir. 2013) (officer allowed to rely on dispatch report of a potential crime among other things).  In this case, Officer Heiple had no report or direct knowledge of a potentially criminal act Johnson had committed.

*reus* of a potential crime. A sample of our cases where we have found warrantless arrests to be supported by a "mistaken but objectively reasonable belief," McMenomy, 869 F.3d at 652 (internal quotation marks omitted)—arguable probable cause—bears this out:

- Arguable probable cause existed to arrest for "intent to cause fear in another of immediate bodily harm" when officers heard suspect "yelling at [victim]" and saw suspect "standing over [victim]." Hosea v. City of St. Paul, 867 F.3d 949, 956 (8th Cir. 2017) (internal quotation marks omitted).

- Eyewitness who described suspect and told officers that the suspect was "yelling at people on the street, shouting racial slurs, and taking photos of the people he was targeting" supplied officers arguable probable cause to arrest suspect. Gilmore v. City of Minneapolis, 837 F.3d 827, 830 (8th Cir. 2016).

- Arguable probable cause existed to arrest suspect for trespass where "security supervisor" of a casino informed officers that suspect was "barred from the property and was not cooperating with casino security officers." Borgman v. Kedley, 646 F.3d 518, 523 (8th Cir. 2011).

- Officers had arguable probable cause to arrest suspect for violation of a restraining order where they observed suspect at a "relatively small public event" with the person who suspect was forbidden from seeing. Ulrich v. Pope Cnty., 715 F.3d 1054, 1060 (8th Cir. 2013).

- Arguable probable cause present where "two witnesses identified [suspect]" and suspect "herself made inconsistent statements." Clayborn v. Struebing, 734 F.3d 807, 809 (8th Cir. 2013).

And perhaps more to the point, where observation—either directly or relayed to the officer—of a criminal *actus reus* is absent, we have found arguable probable cause

-10-

to be lacking.  See, e.g., Small v. McCrystal, 708 F.3d 997, 1005 (8th Cir. 2013) (denying qualified immunity to officer who arrested a bar patron as the patron was leaving the bar to which officer was called to in order to disperse a fight without anything more).

In sum, we find Officer Heiple lacked arguable probable cause to arrest Johnson.  A review of the totality of the circumstances suggests that Officer Heiple had reason to know that Johnson could not deliver the type of pain he felt.  Indeed, he had no information suggesting she was even in a position to do so.  Most importantly, however, the arguable probable cause undergirding the warrantless arrest here was missing a fundamental element: observation—either by Officer Heiple or a witness who relayed that information to him—of a criminal act.[7]

## B.

The next question is whether the "unlawfulness of [Officer Heiple's] conduct was clearly established at the time."  Wesby, 138 S. Ct. at 589 (internal quotation marks omitted).  But, we must first address whether it is proper to answer it.

### 1.

Appellees did not argue this question before the district court.  They only contended that Officer Heiple had arguable probable cause to arrest Johnson.  And

---

[7]We again stress our holding is tied to the "particular circumstances presented." Bernini v. City of St. Paul, 665 F.3d 997, 1003 (8th Cir. 2012).  As we explained in Bernini, "[w]hat is reasonable in the context of a potential large-scale urban riot may be different from what is reasonable in the relative calm of a tavern with a dozen patrons." Id.  Here, there is nothing in the facts found by the district court suggesting exigent circumstances were present: Officer Heiple confirmed that Jareese was secure before turning to Johnson to question her.

so the district court did not address the clearly established prong of the qualified immunity test. On appeal now, however, appellees have argued that the law prohibiting Officer Heiple's actions was not clearly established. Johnson responded rather than assert that the issue was waived.

Normally, "we cannot consider issues not raised in the district court." Lee v. Driscoll, 871 F.3d 581, 584 (8th Cir. 2017) (internal quotation marks omitted). This rule is ironclad when it comes to reversals of the district court. Gregory by Gregory v. Honeywell, Inc., 835 F.2d 181, 184 (8th Cir. 1987) ("It is old and well-settled law that issues not raised in the [district] court cannot be considered by this court as a basis for reversal." (internal quotation marks omitted)). But, we may "affirm the district court on any basis supported by the record." Tatum v. Robinson, 858 F.3d 544, 548 (8th Cir. 2017). Given that we find that consideration of the issue does not counsel reversal of the district court, we "may resolve [it] now on full briefing without the potential inefficiency of a second appeal." Driscoll, 871 F.3d at 590 (Colloton, J., concurring in part and dissenting in part).

2.

In order "[t]o be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." Wesby, 138 S. Ct. at 589. Normally this requires us—outside of an "obvious" constitutional violation—"to identify a case where an officer acting under similar circumstances as Officer [Heiple] was held to have violated the Fourth Amendment." White v. Pauly, 137 S. Ct. 548, 552 (2017). While the case need not be "directly on point, existing precedent must place the lawfulness of the particular arrest beyond debate." Wesby, 138 S. Ct. at 590 (internal quotation marks omitted).

Here, we have such a case. In Kuehl v. Burtis, we held that an officer who did not witness a crime did not have arguable probable cause to arrest a suspect after

-12-

speaking with her only for "twenty seconds" when other eyewitnesses were present and would have exonerated her. 173 F.3d 646, 648 (8th Cir. 1999). Indeed, there are striking parallels to this case—the only investigation undertaken by Officer Heiple was asking Johnson twice if she had kicked him. There was one eyewitness (Moriarty) present that Officer Heiple could have easily turned to. And, as in Kuehl, Moriarty would have exonerated Johnson. Additionally, similar to Kuehl, there were no exigent circumstances that prevented Officer Heiple from speaking with Moriarty before the arrest.

Kuehl is a "controlling case" on these facts. Wesby, 138 S. Ct. at 591. Furthermore, a "body of relevant case law," id. at 590 (internal quotation marks omitted), has carried forward the principle articulated by Kuehl. We have said repeatedly—before Officer Heiple arrested Johnson—an officer "cannot avoid minimal further investigation if it would have exonerated the suspect." See, e.g., Royster v. Nichols, 698 F.3d 681, 688 (8th Cir. 2012) (internal quotation marks omitted). More convincingly, however, drawing on Kuehl, we stated the paradigmatic case where arguable probable cause would not be found is where an officer "[1] had spoken with the suspect for only twenty seconds, [2] ignored exculpatory evidence, and [3] disregarded an eyewitness account." Kedley, 646 F.3d at 523; see also Struebing, 734 F.3d at 810 (officers cannot "disregard plainly exculpatory evidence" and "ignore[] the only witness to the entire altercation" (internal quotation marks omitted)). All three of those things happened in this case. Officer Heiple only asked Johnson twice if she had kicked him. He ignored exculpatory evidence, namely her position, dress, and stature. And he disregarded Moriarty—an eyewitness in close proximity to him.

At bottom, "a reasonable officer, looking at the entire legal landscape at the time of the arrests, could [not] have interpreted the law as permitting the arrest[] here." Wesby, 138 S. Ct. at 593.

III.

Finally, we consider the state-law immunity appeal.[8]  In Minnesota, "[o]fficial immunity provides immunity from suit, not just from liability."  Sletten v. Ramsey Cnty., 675 N.W.2d 291, 299 (Minn. 2004).  And because "immunity is effectively lost if [the] case is erroneously permitted to go to trial," we have jurisdiction to review the denial of Minnesota official immunity here.  Argonaut Great Cent. Ins. Co. v. Audrain Cnty. Joint Commc'ns, 781 F.3d 925, 929 (8th Cir. 2015).  We review de novo.  Bd. of Police Comm'rs, 864 F.3d at 978.

An arrest, under Minnesota law, is a "discretionary" act.  Kelly v. City of Minneapolis, 598 N.W.2d 657, 665 (Minn. 1999).  Official immunity generally protects "public officials from the fear of liability that might inhibit them from discharging discretionary duties," but not where the official acts with "malice."  Id. at 664.  A discretionary act is committed with malice if the "official has intentionally committed an act that he or she had reason to believe is prohibited."  State by Beaulieu v. City of Mounds View, 518 N.W.2d 567, 571 (Minn. 1994).  -We have sometimes tried to draw a clear distinction between federal qualified immunity and Minnesota official immunity by describing qualified immunity as an "objective" inquiry and official immunity for discretionary acts as a "subjective" one.  See, e.g., Nelson v. Cnty. of Wright, 162 F.3d 986, 991 (8th Cir. 1998).  The Minnesota Supreme Court, however, has described the malice inquiry—on which official immunity for discretionary acts turns—as a "principally objective" one which focuses on the "legal reasonableness of an official's actions."  City of Mounds View, 518

_____

[8]As the district court notes, appellees did not raise state-law immunity in their motion for partial summary judgment.  Instead, they asked for qualified immunity on Counts V-VIII.  The district court, however, construed their request as one for official immunity under Minnesota state law.  For the reasons stated in Section II.B.1, we address the official immunity appeal even though it was arguably not raised in the district court.

N.W.2d at 571; see also Smith v. City of Brooklyn Park, 757 F.3d 765, 775 (8th Cir. 2014) (per curiam) (citing City of Mounds View for official immunity standard). This is normally something "to be resolved by the jury." Craighead, 399 F.3d at 963.

Here, Johnson alleges that she was falsely arrested and falsely imprisoned. "Under Minnesota law, if an arrest is made without proper legal authority, it is a false arrest, and so false imprisonment." Baribeau v. City of Minneapolis, 596 F.3d 465, 481 (8th Cir. 2010) (per curiam) (internal quotation marks omitted). For warrantless arrests, "proper legal authority," id. (internal quotation marks omitted), is "reasonable cause" which is "synonymous" with "[t]he constitutional requirement of probable cause," State v. Merrill, 274 N.W.2d 99, 108 (Minn. 1978) (internal quotation marks omitted). Thus, the crucial question here is: can a factfinder find that Officer Heiple had "reason to believe," City of Mounds View, 518 N.W.2d at 571, he arrested Johnson without probable cause?

We believe that a factfinder could make that finding. Given the state of the law at the time of the arrest, the fact that Officer Heiple had no knowledge of a criminal act committed by Johnson (either directly or indirectly from a witness), and exculpatory information available to him, there is evidence to suggest that Officer Heiple had "reason to believe," id., he lacked probable cause to arrest Johnson. Thus, the district court correctly denied official immunity on counts V and VII of Johnson's complaint. For the same reasons, it also correctly denied vicarious official immunity for the City of Minneapolis on counts VI and VIII of Johnson's complaint. See Wiederholt v. City of Minneapolis, 581 N.W.2d 312, 316 (Minn. 1998) (holding that where "[official] was not entitled to official immunity . . . the city is not entitled to vicarious official immunity").

-15-

## IV.

For the foregoing reasons, we affirm the district court in full.

_____